# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# (Big Stone Gap Division)

| | |
|---|---|
| MELINDA SCOTT,<br><br>      Plaintiff,<br><br>v.<br><br>WISE COUNTY DEPARTMENT OF SOCIAL SERVICES, *et al.*,<br><br>      Defendants. | Case No. 2:20-cv-00014-JPJ-PMS<br><br>**Joshua Moon's Combined Memorandum in Opposition to Motion to Strike and in Support of Motion to Set Aside Default** |

NOW COMES Joshua Moon, and files this combined memorandum in opposition to the Plaintiff's Motion to Strike (Dkt. No. 29) and in further support of his Motion to Set Aside Default Judgment (Dkt. No. 25).

## I. Introduction

On December 7, 2020, undersigned counsel filed a Notice of Appearance, Motion to Set Aside Default Judgment, and Motion to Dismiss. See Dkt Nos. 24-27. On December 8, 2020, the Court ordered Plaintiff to respond to those motions by December 31. Dkt No. 28.

Plaintiff served an unsigned copy of a Motion to Strike on undersigned counsel via email on December 8, 2020, and that document appears to have subsequently been filed with the Court on December 10, 2020. See Dkt. No. 29. Defendant Moon notes that the Plaintiff's Motion to Strike appears to combine arguments that would traditionally be addressed under Fed. R. Civ. P. 12(f) and arguments that would ordinarily be expected in a response to the underlying Motion to Set Aside the Default.[1] Therefore, undersigned counsel responds to both the Plaintiff's Rule 12(f) arguments and her Rule 55 arguments in separate sections of this memorandum.

---

[1] Plaintiff's filing begins with a statement that it is tendered "in response to Defendant Moon's Motion to Set Aside Default and… in support of her motion to strike." As such, undersigned

## II.     Standard for a Motion to Strike

Fed. R. Civ. P. 12(f) provides that this "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As a threshold matter, a motion is not a "pleading" within the meaning of Rule 12. The Fifth Circuit, for example, expressly held that a Motion to Dismiss was not a pleading in *Lawhorn v. Atl. Ref. Co.*, 299 F.2d 353, 354 (5th Cir. 1962) ("Rule 12(b) makes a clear distinction between a pleading and certain motions, including a motion to dismiss."). The Fourth Circuit embraced the *Lawhorn* holding in *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 795 (1993) ("Mellon filed a Rule 12(b)(6) Motion to Dismiss, which is not a pleading.").

The Fourth Circuit went a step further in *Mellon Bank* than the Fifth Circuit did in *Lawhorn*, however: The Fourth Circuit also cited Fed. R. Civ. P. 7 for the distinction between "pleadings" and "motions." *Id*. In turn, Fed. R. Civ. P. 7 (a) contains an exhaustive list of pleadings, under the introductory statement "*Only* these pleadings are allowed." (emphasis added). That list of pleadings is expressly differentiated from "Motions and Other Papers," which are listed at Fed. R. Civ. P. 7(b).

If this Court wishes to treat the Motion to Dismiss or Motion to Set Aside Default Judgment as pleadings, the standard for a Motion to Strike is set forth in *Xerox Corp. v. ImaTek, Inc.*, 220 F.R.D. 244, 245 (D. Md. 2004). "Courts are granted considerable discretion to determine motions to strike, especially if the allegations… will cause prejudice at a later date in the litigation." *Id*., citing 5A Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, § 1382 (1986). However, "before a motion to strike will be granted, the allegations must be both

---

counsel assumes that a separate Plaintiff's memorandum will be forthcoming relating to the Motion to Dismiss (Dkt. No. 26) but that the Motion to Set Aside Default Judgment (Dkt. No. 25) is now fully briefed and ripe for disposition.

immaterial and prejudicial*." Xerox Corp.*, 220 F.R.D. at 245, citing *Hare v. Family Publications Service*, 342 F.Supp. 678, 685 (D. Md. 1972). "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001), citing 5A A. Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990) (internal quotations omitted).

### III.    Standard for a Rule 55 Motion to Set Aside Default

Although the motion filed at Dkt. No. 25 was erroneously captioned as a Motion to Set Aside Default Judgment, this Court correctly noted at Dkt. No. 28 that it is actually a Motion to Set Aside the Entry of Default under Fed. R. Civ. P. 55(c). The distinction is an important one, because, as the Fourth Circuit has held, "the burden on a movant seeking relief under the two rules is not the same." *Colleton Preparatory Acad., Inc. v. Hoover Universal*, 616 F.3d 413, 420 (4th Cir. 2010) (comparing Rule 55(c) with Rule 60(b)). When a movant seeks to set aside a final judgment under Rule 60(b), there are compelling interests by those who hold an enforceable judgment in "finality and repose." In such cases, therefore, the party seeking relief from default must show that they are a victim of "excusable neglect." *Id*. By contrast, Rule 55(c) motions are judged by a "'good cause' standard which is more forgiving of defaulting parties." *Id*. "Rule 55(c) motions must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Id*. at 421, citing *Tolson v. Hodge,* 411 F.2d 123, 130 (4th Cir. 1969)."

### IV.    Facts Relating to the Motion to Strike

Ms. Scott takes issue with the motions filed by undersigned counsel for various reasons. Unfortunately, she appears to do so without citing to the particular portions of a motion that she

takes issue with. Responding to Ms. Scott's characterizations in her motion is rendered somewhat difficult because counsel cannot determine whether she seeks to strike certain paragraphs, certain allegations, or the motions filed by undersigned counsel in their entirety.

The crux of Ms. Scott's grievance appears to be that the Motion to Dismiss (Dkt. No. 26) and Motion to Set Aside Default Judgment (Dkt. No. 25) refer to Ms. Scott's numerous prior suits, including her various suits in this Court and at least two other courts against Mr. Moon. Far from asserting that the facts alleged in Mr. Moon's motions are scandalous, immaterial, or prejudicial, however, Ms. Scott appears to confirm key elements of her long-running *pro se* crusade against Mr. Moon in the state and federal courts of Southwest Virginia. She admits at Dkt. No. 29, p. 2 *et seq*. that she has filed numerous suits against Mr. Moon, and castigates judges who dismissed those suits for "present[ing] no case law" or insisting that she is required to plead "every" fact. Ms. Scott's first footnote insinuates that she is considering re-filing a state court action against Mr. Moon. Dkt No. 29 at p. 2, fn. 1. Ms. Scott then recounts how she "transferred" her campaign of litigation against Mr. Moon from state court to federal court, and drops a second footnote to question this Court's previous rulings dismissing her claims. Dkt. No. 29 at p. 3, fn. 2. To the extent that Ms. Scott believes that the motion filed by Mr. Moon did not detail the entire history of every individual and entity Ms. Scott has sued in Virginia, she has taken care to supplement the voluminous catalogue of her litigation in her own filing. Dkt. No. 29 at 2-3 and 7-8.

At Dkt. No. 29, p. 4, Ms. Scott alleges that Mr. Moon's motions create bias. ("[T]he motive of Mr. Hardin seems to be aimed at creating bias against the Plaintiff as a pro-se litigant who has had some prior dismissals."). Following a few pages of allegations that appear directed

at counsel,[2] rather than the substantive or syntactical merits or demerits of the motions that have been filed, Ms. Scott turns to address substantive merits of the Motion to Set Aside the Default Judgment at p.8 et *seq*.

V.     **Facts Relating to the Motion to Set Aside Default**

It appears from the Motion to Strike that at least some of the facts asserted in Mr. Moon's Rule 55 Motion are uncontested. For example, Mr. Moon alleged at Dkt. No. 25-1, p. 2 that he never received service in two prior suits filed by Ms. Scott in this Court. Ms. Scott appears to acknowledge at Dkt. No. 29, p. 1 that she served those two prior suits on the same Florida address that the present suit was "served" at. Mr. Moon further alleged that he moved to retain counsel as soon as he became aware of the default by mail from the clerk of court. Dkt. No. 25, p.1. Ms. Scott does not challenge that assertion.

Mr. Moon's Rule 55 motion repeatedly refers to the Motion to Dismiss which was filed contemporaneously, because one of the *Payne* factors is whether the defaulted party has a meritorious defense. See Dkt. No. 25. The Motion to Dismiss, in turn, catalogues not only the legal insufficiencies of the complaint and various jurisdictional infirmities, but also facial deficiencies with both the process itself and with the service of process in this case. Although Ms. Scott states at Dkt. No. 29, p. 12 that she intends to respond separately to the Motion to Dismiss, it bears repeating here that there are ample reasons to believe that the summons and

---

[2] Indeed, it appears Ms. Scott may have already decided to utilize the Virginia State Bar's disciplinary system as an additional battlefield in the legal warfare that she has instituted against Mr. Moon and others. See https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-731 (last accessed December 9, 2020) ("It's going to look hilarious when someone gets reported to the BAR association."). Notably, this statement appears to have been made December 9, 2020 at 8:56 a.m., which was less than 48 hours after undersigned counsel first entered his appearance in this case.

complaint never reached Mr. Moon. Even assuming, *arguendo*, that service had reached Mr. Moon, the relevant "process" did not contain the name of the Court in which this lawsuit was pending. See Dkt. No. 26 at p. 2 and 26-1 at p. 9, citing to Dkt. No. 5. Even setting aside the legal issue of whether the lack of a named and identifiable court on a summons vitiates such process, such a summons would, from a practical standpoint, very much impede a defendant's ability to determine where to answer any claims against him.

### VI.     Argument

As stated above, Plaintiff's responsive filing contains both an independent Motion to Strike and a response to various elements of Mr. Moon's Rule 55 motion. Defendant Moon will address the Motion to Strike and the Rule 55 motion in separate sections of this brief.

#### 1.     Argument Relating to the Motion to Strike

The Plaintiff's Motion to Strike is procedurally improper because Ms. Scott attempts to strike a motion rather than a pleading. Even assuming that the standard for striking *pleadings* applied to Mr. Moon's *motions*, Mr. Moon's motions raise relevant arguments for this Court to consider and are not scandalous or otherwise improper. As such, Ms. Scott's Motion to Strike should be denied.

##### a.     Rule 12(f) does not Apply to the Material at Issue.

The simplest ground on which this Court should deny Ms. Scott's motion is that the Plaintiff seeks to strike *motions*, rather than *pleadings*. Rule 12(f) permits a "pleading" to be stricken on various grounds, but there is simply no pleading to strike in this matter. Even in cases where pleadings have been filed, Fed. R. Civ. P. 12(f) only empowers the court to strike an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Mr. Moon has not, at this stage of the proceedings, filed an answer or raised any affirmative defenses

that could possibly be deemed "insufficient." Nor has he repeated any of his motions in a redundant manner.[3] Defending a claim by filing available and procedurally permissible motions can hardly rise to the level of impertinence. Nor can documenting the procedural history of litigation be considered "scandalous matter."

### b. There is No Possibility for "Prejudice at a Later Date."

In a typical case where it is a *pleading* that is at issue, striking an insufficient defense or scandalous material prevents prejudice later in the proceedings. This is so because the issues that are *pleaded* will inevitably crop up again later in the proceedings, whether in the discovery context, in motions for summary judgment, or at trial. Scandalous material must be stricken from the pleadings so that it does not become evidence presented before a jury. Insufficient defenses must be stricken because presenting evidence to support a legally insufficient defense would waste judicial resources. Redundant material must be stricken for the same reasons.

Here, Ms. Scott speaks generally to perceived biases against *pro se* litigants, but does not show any future harm that she expects will accrue to her on the basis of the motions that are at issue. If the Default is set aside, the case will be adjudicated on its merits. A trial or other adjudication on the merits is not a harm or a prejudicial event. Indeed, the Fourth Circuit has already held that "no cognizable prejudice inheres in requiring a plaintiff *to prove* a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." *Colleton Preparatory Acad., Inc. v. Hoover Universal*, 616 F.3d 413, 419 (4th Cir. 2010). Likewise, if the Motion to Dismiss is granted, it will be granted because no viable claim has been

---

[3] In an effort to streamline the arguments presented, to present reduplication of effort, and prevent spillage of excess ink, the Motion to Set Aside Default Judgment (Dkt. No. 25) largely references the contemporaneously-filed Motion to Dismiss (Dkt. No. 26) in support of arguments relating to Mr. Moon's meritorious defense and good cause for not receiving service.

raised by the Plaintiff or because of various other substantive deficiencies in the case that she has filed. Dismissal would not flow from any judicial prejudice or bias.

Nor is there any evidence or argument presented that could lead this Court to find that the existence and filing of the motions themselves, with whatever factual allegations they contain which Ms. Scott perceives to be unfavorable, is itself a prejudice. No argument has been made that the facts alleged in the motions deprive Ms. Scott of the rights of any other citizen or subject her to harms outside the context of this litigation. To the extent that Ms. Scott has elected to supplement the factual record by bringing forth various allegations in her own Motion to Strike, she has mooted any perceived need to erase the original allegations in Mr. Moon's motions.

### c. The Content of the Motions is Material and is not Prejudicial.

Ms. Scott herself has now cited even more cases that she has filed in various courts in Southwest Virginia, and has indicated displeasure at the decisions that have been issued by both state and federal courts dismissing those cases. To the extent that Defendant Moon seeks an early dismissal of this matter because he has been sued *seriatim* by the same litigant in multiple *fora* over the past three years and each case has been dismissed for failure to state a claim, Ms. Scott's most recent filing only serves to further illustrate the close scrutiny her claims merit and the dangers of allowing this case to be adjudicated on the basis of anything other than its merits.

A sister court in this Circuit has held that "Rule 12(f) Motions will be denied unless" the material the movant seeks to strike has "'no possible relation to the controversy and may prejudice the other party.'" *U.S. ex rel. Ackley v. IBM*, 110 F.Supp. 2d 395, 406 (D. Md. 2000), quoting *Steuart Inv. Co. v. Bauer Dredging Constr. Co.*, 323 F.Supp. 907, 909 (D. Md. 1971). The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits" and has

explained that there is a "strong policy of merits-based adjudication." *Colleton*, 616 F.3d at 417. Ms. Scott's history of filing claims against Mr. Moon, and the fact that each of those claims has been dismissed on the basis of improper pleading and/or failure to state a claim, are relevant factors for this Court to consider as it evaluates whether this case should be adjudicated on the merits or in a default posture. Moreover, there is nothing "prejudicial" about citing to the judicial records of various state and federal courts. Indeed, as Mr. Moon noted in his Memorandum in Support of the Motion to Dismiss, this Court is permitted to take judicial notice of court records. Dkt 26-1 at p. 2, fn. 5.

2. **Argument Relating to the Rule 55 Motion**

The Plaintiff appears challenge Defendant Moon's entitlement to relief under all four of the *Payne* factors. Dkt. No. 29, at p. 8 *et seq*. First, Ms. Scott attempts to blame Mr. Moon for the current default posture of this case. She asserts that Mr. Moon's failure to check his mail in Florida is an act which indicates he is to blame for the status of this litigation. Second, Ms. Scott asserts that relief from default will work prejudice upon her for various reasons. Third, Plaintiff asserts that Mr. Moon has behaved in a dilatory manner because he did not respond to a discovery request. Lastly, Ms. Scott argues that the meritorious defense standard is "subjective."

In each of her arguments, the Plaintiff's analysis runs headlong into both the controlling law and the facts of this case. Even assuming, *arguendo*, that Mr. Moon had failed to check his mail,[4] Mr. Moon has no obligation to check his mail under the various rules of court and

---

[4] The record is bereft of evidence indicating Mr. Moon failed to check his mail. In fact, Mr. Moon retained counsel only after receiving an item of mail from the clerk which indicated he had been found in default. See Dkt Nos. 25-26. However, from the face of Dkt. No. 5, there is ample reason to understand why the summons never reached him: it was left with an unnamed "employee" who may or may not have been "in charge" as that term is defined at Fla. Stat. 48.031 (6)(a) or appropriately trained, and that employee indicated not that the summons would be delivered to Mr. Moon or that Mr. Moon would check his "electronic" mailbox at the location

procedural laws that apply to him. The prejudices Ms. Scott cites in support of keeping this case in its current posture are not legally cognizable under controlling precedent that Ms. Scott has cited in her own Motion. A defendant's failure to respond to discovery in a suit in which he has not received even a summons and complaint is hardly surprising and cannot possibly be viewed as dilatory behavior. Lastly, whether or not the "meritorious defense" standard is subjective as Ms. Scott alleges, it is incorporated into controlling caselaw from the U.S. Court of Appeals for the Fourth Circuit and must be applied by the district courts in this Circuit. Defendant Moon addresses each argument in greater detail below.

### a. Mr. Moon is not to Blame for the Default Posture of this Case.

Plaintiff cites two cases involving service by certified mail in her Motion to Strike. *See* Dkt. No. 29 at p. 9 *et seq*. Those cases are *Park v. Lexington Ins. Corp.*, 812 F.2d 894 (4th Circ. 1987) and *Colleton Preparatory Academy v. Hoover Universal, Inc.*, 616 F.3d 413 (4th Cir. 2010). Although the Plaintiff cites these cases for the proposition that Defendant Moon bears "personal responsibility" for the default posture of this case because he did not receive service of process, neither case is apposite. Both *Park* and *Colleton* involve service of process by certified mail in accordance with the laws of states that permit service by mail. By contrast, there was no service by certified mail in this case and the procedural laws and rules that apply in this case do not permit such service.

In *Colleton*, service of process was delivered to the defendant's registered agent using certified mail, in compliance with the laws that govern service of process in the state courts of

---

in question, but rather that it would be forwarded to some *other* (again unnamed) third party, whom Mr. Moon would have the "option" to pay to receive it. Thus, there appear to be at least two "missing links" between where the summons was served and Mr. Moon.

South Carolina.[5] The Fourth Circuit expressly noted compliance with South Carolina laws relating to service of process when it upheld the District Court's finding that service was proper. See *Colleton*, 616 F.3d at 421, fn. 9.[6] Similarly, *Park* also involved service by certified mail. The insurance company that was the defendant in *Park* actually acknowledged that it had received and signed a receipt for (but subsequently misplaced or mishandled) the summons and complaint. See *Park*, 616 F.3d at 897. *Park* was also an appeal from the U.S. District Court for the Southern District of West Virginia, which court sits in a state where local law permits the service of process by certified mail. See W. Va. R. Civ. P. 4(d). Notably, it appears that the laws of both South Carolina and West Virginia require "restricted delivery" of summonses that are served by certified mail, such that there is a reasonable assurance that a summons actually reaches the individual to whom it is directed.

The Federal Rules of Civil Procedure permit service by certified mail only on certain governmental defendants. See Fed. R. Civ. P. 4(i). Alternatively, federal procedure permits (and even incentivizes) a waiver of service to be accomplished by mail. Fed. R. Civ. P. 4(d). But there is nothing in the record in this case which establishes that Mr. Moon is a party who can be served by mail consistent with the Federal Rules of Civil Procedure, nor that he waived service of process in accordance with those rules. Although the federal rules do incorporate the laws of the several states relating to service at Fed. R. Civ. P. 12 (e)(1), neither the laws of Virginia nor the

---

[5] See S.C. Civ. R. 4(d)(8), which expressly contemplates that service by certified mail is not the basis for a default judgment unless accepted by the defendant, and that any default will be set aside if the defendant can demonstrate that an "unauthorized person" signed the receipt for service.

[6] The Fourth Circuit reversed the District Court's denial of the defendant's motion to set aside the default, even though the appellate court upheld the District Court's finding that service was proper. Thus, Defendant Moon argues in the alternative that even if service of process was proper in this case, the entry of default should nevertheless be set aside under the same principles set forth in *Colleton*.

laws of Florida permit service by mail, much less service that was conducted in the manner that is apparent from a review of Dkt. No. 5.

Va. Code § 8.01-286.1 mirrors the federal rules in encouraging waiver of formal service. Absent waiver, however, Va. Code § 8.01-296 and Va. Code § 8.01-320 govern the service of process in the courts of Virginia. Service by mail (including certified mail or mail addressed in a manner that will restrict delivery to the intended recipient) is not permitted. Fla. Stat. 58.031 governs service of process in Florida. Although service of certain witness subpoenas is permitted to be conducted by mail pursuant to Fla. Stat. 48.031(3)(a), Florida does not allow service of civil complaints by mail.[7]

This case presents a scenario where the defendant is far less culpable than in *Colleton* or *Park*. Unlike the corporate defendant in *Park*, which acknowledged it had received service and signed a receipt for such service, Mr. Moon never received the summons and complaint in this matter and there is no evidence to indicate that he did.[8] Unlike the *Colleton* defendant, service was not directed to a registered agent who would have been expected to forward process to its intended recipient. Plaintiff also cites *Colleton* without mentioning much of its key language. Although the Motion filed at Dkt. No. 25 was inadvertently captioned a Motion to Set Aside

---

[7] Fla Stat. 48.031 (6)(a) does permit service under certain circumstances at a "private mailbox." However, there are ample reasons that the service returned at Dkt. No. 5 does not comply with Fla. Stat. 48.031 (6)(a). Among the facial deficiencies: There is no evidence that "the only address" that was available for Mr. Moon was a private mailbox. The "mailbox" that was served appears not to have been a physical mailbox at all, but an "electronic mailbox." The employee who received the summons is unnamed and may or may not have been "in charge" of the mailbox. See also fn. 4, *supra*, and Dkt. 5, both of which note that summons was not held at the location it was delivered to or forwarded directly to Mr. Moon, but rather sent to an unnamed third party.

[8] As noted elsewhere in this memorandum and in Mr. Moon's Motion to Dismiss, even if Mr. Moon had received the summons, it did not contain the name of the court the case was pending in and would not have facilitated any response on his part.

Default Judgment, it nevertheless sought relief under Fed. R. Civ. P. 55 (c), which governs setting aside an entry of default. By contrast, Fed. R. Civ. P. 60 (b) governs relief from a final judgment in a monetary amount. Plaintiff cites *Park*, a case where a District Court denied relief from a final judgment but ignores language in the Fourth Circuit's opinion in *Colleton* that clearly differentiated between the relaxed standard in Rule 55 and the harsher standard for a motion under Rule 60. The *Colleton* Court held that Rule 55(c) motions ought to be held to a "forgiving" standard requiring only a showing of "good cause." *Colleton,* 616 F.3d at 420.

### b. No Legally Cognizable Prejudice will Accrue to Ms. Scott.

Ms. Scott mentions various forms of prejudice she feels she might experience if Mr. Moon is granted relief from default. Dkt. No. 29 at p.10-11. First, Ms. Scott alleges that she will suffer continued stress and inconvenience if this case is set back in its progress. Second, Ms. Scott alleges that she has prepared for a damages hearing, that she has filed Motions for Breastfeeding Accommodations and Entry of Default, all of which have required her time and resources. Unfortunately, the prejudice Ms. Scott cites is not legally cognizable in this context.

As detailed above, the Fourth Circuit has expressly held that "no cognizable prejudice inheres in requiring a plaintiff *to prove* a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." *Colleton,* 616 F.3d at 419. The Fourth Circuit further held that "delay in and of itself does not constitute prejudice to the opposing party." *Id.*at 418 citing *Indigo America, Inc. v. Big Impressions, LLC,* 597 F.3d 1, 4 (1st Cir. 2010).

Thus, requiring this litigation to proceed as ordinary litigation, with the Plaintiff required to present her case on its merits to the Court according to the usual processes and procedures, is not a burden Ms. Scott must shoulder. Instead, it is a natural and expected result of the choice that she made to file a lawsuit against Mr. Moon in federal court. To the extent that Ms. Scott has

prepared for a damages hearing that has yet to be scheduled, her preparation will doubtless come in handy if there is a trial on the merits in this matter. To the extent that Ms. Scott has filed a Motion seeking Breastfeeding Accommodations, the Court and the defense can continue to accommodate her health needs at any merits-based hearing in the same manner that she would be accommodated at a damages hearing conducted in the current posture of default.

### c. Mr. Moon has not been Dilatory in this Case.

Ms. Scott argues that Mr. Moon has been dilatory in this matter because he did not respond to a discovery request. See Dkt. No. 29 at p. 11, citing Dkt. No. 18-1. Unfortunately, Ms. Scott neglects to mention that at the time the request for production of documents was sent to Mr. Moon, he had not been served with lawful process. See generally Docket Nos. 25-26. A discovery request which was served before the defendant had received a summons and complaint and long before the time for a responsive pleading had elapsed cannot serve to put the defendant on notice that there is a claim pending in this Court.[9] Only proper service pursuant to Fed. R. Civ. P. 4 can put a defendant on notice that there is a lawsuit against him or subject a defendant to the jurisdiction of the Court. Absent any display of this Court exercising jurisdiction and without notice of the suit in a manner that comports with Due Process and Fed. R. Civ. P. 4, there can be no legal obligation for Mr. Moon to respond to Ms. Scott's requests, and he is therefore incapable of behaving in a dilatory manner.

---

[9] It is Mr. Moon's position that Ms. Scott's discovery attempts were premature under Fed. R. Civ. P. 34 (b)(2)(A). Mr. Moon is only obligated to respond to discovery requests 30 days *after* he is served with a copy of the summons and complaint, which has not yet occurred. Although it is understandable that Ms. Scott may have made a premature discovery attempt in light of the order entered at Dkt. No. 17, p. 2, Mr. Moon's failure to reply does not constitute dilatory behavior on his part.

To the extent Ms. Scott raises the issue of dilatory behavior, however, she opens the door to arguments relating to her own dilatory behavior. As the Fourth Circuit recently noted, "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001), citing 5A A. Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990). Ms. Scott's decision to file a Rule 12(f) Motion of her own to strike Mr. Moon's Rule 55 Motion, and to use that motion to impugn either counsel or the American system of Capitalism rather than bringing forward any meritorious arguments based in law, suggests a dilatory motive on her part. The implicit threats contained in the Motion to Strike to again sue Mr. Moon in state court suggest an improper motive underlies Ms. Scott's pattern of litigation.[10] See *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 256 (4th Cir. 2013 (Duncan, J., Concurring) (finding "improper intent" when a party sought to "subvert" an otherwise proper defensive filing).

By contrast, this Court should consider Mr. Moon's swift action to defend the claim(s) against him once he became aware that he was in default. Rather than being dilatory, Mr. Moon moved with alacrity to respond by retaining and instructing counsel in a period of less than two weeks, even though Mr. Moon resides in a foreign country. See Dkt. No. 25-26. This Court has previously held that "promptly fil[ing] documents after making a notice of appearance" militates against a finding of dilatory behavior, not in favor of such a finding. *Armeni v. Trans Union LLC, Inc.*, No. 3:15-cv-00066, 2016 U.S. Dist. LEXIS 98962, at *14 (W.D. Va. July 28, 2016).

---

[10] See also fn. 2, *supra*.

### d. The "Meritorious Defense" Standard Applies.

Ms. Scott argues that it is "subjective" whether Mr. Moon has a meritorious defense. Dkt. No. 29 at p. 12. Whether the standards imposed by the Fourth Circuit are subjective or not is beyond the pay grade of undersigned counsel. Regardless, the Fourth Circuit has made clear that the existence of a meritorious defense is one element a district court must consider in determining whether to grant relief from default. *Payne v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006). To paraphrase Lord Tennyson in *The Charge of the Light Brigade*, "ours is not to question why."

Insofar as the "meritorious defense" test does apply, Mr. Moon can only point to the contents of his Motion to Dismiss and the numerous procedural, substantive, and even jurisdictional defects he alleges. It is this Court that will make the determination whether Ms. Scott has a valid claim and whether he has a valid defense.

## VII. Conclusion

The Court should deny the motion to strike on the basis that Rule 12(f) does not permit non-pleadings to be struck. Alternatively, the Court should deny the motion to strike because the motions raise relevant material for this Court to consider and are not impertinent, scandalous, or otherwise improper. The Court should grant Mr. Moon relief from default and proceed to adjudicate the Motion to Dismiss. See Dkt. No. 26.

Respectfully submitted this the 11th day of December, 2020,

JOSHUA MOON

By Counsel:

/s/Matthew D. Hardin
Matthew D. Hardin, VSB # 87482
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: 202-802-1948
Email: MatthewDHardin@protonmail.com

## Certificate of Service

      I hereby certify that I will file a true and correct copy of the foregoing document with the Court's CM/ECF system, which will electronically serve counsel of record. I have also deposited a true and correct copy of the foregoing document into the U.S. Mail, with First Class postage prepaid, directed to:

        Melinda Scott
        2014PMB87
        Post Office Box 1133
        Richmond, VA 23218

Dated: Dec. 11, 2020

        /s/Matthew D. Hardin
        Matthew D. Hardin
        *Counsel for Joshua Moon*