## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### (Big Stone Gap Division)

MELINDA SCOTT,

                                        Plaintiff,

v.                                                          **Case No. 2:20-cv-00014-JPJ-PMS**

WISE COUNTY DEPARTMENT OF
SOCIAL SERVICES, *et al*.,

                                        Defendants.

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

NOW COMES Joshua Moon, by counsel, and submits this reply memorandum in further

support of his Motion to Dismiss.

### I.    Introduction

Mr. Moon, an American who presently resides in the European Union, became aware of this

case and the Entry of Default found at Dkt. No. 20 when he received entry of default by mail

from the clerk's office. See Dkt. Nos.  25, 26, and 30. Undersigned counsel filed two

simultaneous motions on December 7, 2020, a mere 20 days after default was entered and within

days of undersigned counsel being retained. The first filing by Mr. Moon was a Motion to Set

Aside Default (erroneously captioned as a "Motion to Set Aside Default Judgment"). Dkt. No.

25. The second filing was a Motion to Dismiss. Dkt. No. 26.

Because one of the factors this Court must evaluate in ruling upon a Fed. R. Civ. P. 55 (c)

Motion to Set Aside Default is whether the party seeking to set aside default has a meritorious

defense, *Payne v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006), undersigned counsel felt it

appropriate to file the two motions simultaneously to demonstrate the merits of Mr. Moon's defense for purposes of evaluating both motions. However, the Plaintiff's briefing since December 7 has frequently commingled arguments that relate to the Motion to Set Aside Default, the Motion to Dismiss, and various of the Plaintiff's own motions. See Dkt. Nos. 29, 41, 42, 43, and 44.

Because Local Civ. Rule 11 (c)(1) prohibits undersigned counsel from filing sur-reply or sur-rebuttal briefs without leave of court, this brief will address only the merits of the Motion to Dismiss filed at Dkt. No. 26. If the Court believes that further briefing on the other issues raised by the Plaintiff relating to setting aside default would be beneficial, Mr. Moon would be happy to supplement his earlier briefs and address extraneous arguments which have been raised by the Plaintiff in the interim. In the absence of leave of court to address other issues, however, undersigned counsel confines this response to the merits of the Motion to Dismiss.[1]

## II.    Standard of Review

"The pleading requirements for surviving a Rule 12(b)(6) motion are well established." *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in the sense that the complaint's factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and quoting *Bell Atl. Corp. v. Twombly*, 550

---

[1] Specifically, this brief will not address the arguments made in the Plaintiff's filings under the headings "Defendant's Rule 12 Motion to Dismiss barred by entry of Default and Court Order," "Defendant's Motion to Dismiss irrelevant without a valid reason for lapsing into Default," and "Legal Standard in the 4th Circuit to overturn an entry of Default Order." Should the Court wish to consider arguments relating to other subjects which Ms. Scott has raised in her response the Motion to Dismiss or other filings, Mr. Moon requests leave to file a sur-reply to his Motion to Set Aside Default. See Dkt. Nos. 25 and 30.

U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This Court, however, need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

## III.   Argument

As set forth in Mr. Moon's initial motion and its accompanying memorandum, this case should be dismissed with prejudice on any or all of several grounds set forth in Fed. R. Civ. P. 12. Alternatively, it should also be dismissed based on doctrines of *forum non conveniens*. Based on arguments made in the Plaintiff's own response to the Motion to Dismiss and highlighted in the defense motion at Dkt. No. 45, it additionally appears that the claims Ms. Scott attempts to bring against Mr. Moon are barred by the doctrines of *res adjudicata*, claim preclusion, and/or collateral estoppel.

### a)  Process was Facially Defective in this Matter.

The Plaintiff repeatedly conflates the issue of whether "service of process" was proper in this matter with the issue of whether "process" in this matter was proper. However, the two issues are distinct and are addressed by separate subsections of Fed R. Civ. P. 12. The Fourth Circuit has also recognized the distinction, and recently upheld a dismissal on process grounds even in a case where service was not in dispute. *Mid South Carbon Corp. v. TriCamp Capital*, LLC, 622 Fed. Appx. 223 (4th Cir. 2015).

Rule 12 (b)(4) provides that "insufficient process" is a defense that may be presented by Motion. Dismissal is the appropriate remedy when a summons is facially defective, as it was in this case. See, e.g., *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996) ("A summons which is not signed and sealed by the Clerk of the Court does not confer personal

jurisdiction over the defendant."), *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1399 (7th Cir. 1993) (holding that summons lacking the court's seal was invalid).

As the *Ayers* Court held, a deficient or defective summons also presents jurisdictional problems. "The validity of a court order depends on the court having jurisdiction over the subject matter and the parties…. Without personal jurisdiction 'the court is powerless to proceed to an adjudication.'" *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 903-04 (6th Cir. 2006), citing *Ins. Corp. of Ireland, Ltd. v. Compagnie de Bauxites de Guinee*, 456 U.S. 694, 701, 102 S. Ct. 2099 (1982) and *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563 (1999).

The summons in this matter was and is facially defective. It does not contain the Court's name, much less the Court's seal. The only signature on the summons is handwritten and the signature's surname is illegible. The stamp on the summons indicates it was received in Roanoke on August 18, 2020, but that stamp was affixed by the U.S. Marshal's Service and also fails to contain the name of the court that issued it. Even leaving aside the issue of whether the summons was served properly, the summons was itself entirely insufficient in this matter. It could not have been used to alert its recipient what court was hearing this matter, and was incapable of bringing any recipient within this Court's jurisdictional ambit.

**b) Service of Process was Fatally Defective.**

The Plaintiff's arguments relating to the service of process are unavailing. To the extent that Ms. Scott attempts to set forth arguments relating to how one ought to serve Lolcows, LLC (an entity she has sued in the past, but elected not to sue in the instant matter), those arguments do not permit her to sue Joshua Moon, an individual, in the same matter that she would be permitted to serve an LLC. She cites no law in Florida or Virginia that permits her to serve an individual at a business address (especially when such individual is not present), and the relevant federal rules

only permit service on an individual at a "place of abode." To the extent that the Plaintiff recapitulates previous arguments relating to service by mail, those arguments have already been addressed at Dkt No. 30. Lastly, to the extent that the Plaintiff attempts to allege that the unnamed employee of the Kwik Pack & Ship who allegedly received the summons was somehow an employee or registered agent of Mr. Moon, such an assertion is entirely without evidence or even facial *indicia* of plausibility.

When attempting to sue an individual in a foreign country, strict compliance with the rules for service of process is even more important than it is in an ordinary case. "When the local sheriff knocks on a door of a resident in his own community with a summons to answer a neighbor's charges, the recipient usually reacts. When the summons calls on him to answer charges half a world away in a court he has never heard of, the party served may be less likely to bestir himself, not recognizing that a failure to do so may have serious adverse consequences." *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993). In *Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445 (7th Cir. 2000), the Seventh Circuit reversed a default judgment in a case brought against an American defendant who had moved to Canada. In that case, the Seventh Circuit was particularly concerned because "the evidence does not show who the person [the process server] served was. It might have been [the defendant], but it equally might have been a third (unidentified) resident of the apartment, a guest, or a passerby." *Id.* at 453. Equally in the present case, the proof of service filed at Dkt. No. 5 does not indicate who the Deputy U.S. Marshal served. Service on an unnamed employee at a Kwik Pack & Ship for further delivery to another unnamed third party comports neither with the rules of procedure nor with basic principles of due process.

Nor do the cases Ms. Scott cites to allege that proof of service was proper support her own arguments. The Plaintiff liberally cites *Wade v. Alamance Cnty. Dep't of Soc. Servs.*, No. 1:19CV619, 2020 U.S. Dist. LEXIS 119255, at *5 (M.D.N.C. July 8, 2020). *Wade*, although unpublished, directly quotes *Armco, Inc. v. Penrod-Stauffer Bldg. Sys.*, 733 F.2d 1087, 1089 (4th Cir. 1984). *Armco* directly contradicts the Plaintiff's preferred notion that defects in service do not invalidate such service.

In *Armco*, the Fourth Circuit reversed a default judgment against a corporate entity that was not properly served even though the corporate entity in question had actual notice of the lawsuit, holding:

> The defendant, of course, had notice that an action had been commenced by the filing of a complaint. When the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored. This is particularly so when the means employed engenders the kind of confusion which the defendant's officers reasonably experienced here, leaving them without clear notice of the necessity to respond. Since there was no valid service of process, the district court was without jurisdiction of the defendant, and the default judgment was void.

*Armco, Inc. v. Penrod-Stauffer Bldg. Sys.*, 733 F.2d 1087, 1089 (4th Cir. 1984). *Armco* is a binding precedent in this Circuit which indicates that the rules, although liberally construed, are "there to be followed." *Id*.  Even assuming, *arguendo*, that Defendant Moon had "actual notice" that a lawsuit was pending, such actual notice is insufficient in this case for the same reason it was insufficient in *Armco*. Indeed, even assuming that Defendant Moon had actually received the summons in this matter, the "actual notice" that he would have received would not have provided him any information about what court this matter was pending in and would not have facilitated

any swifter response on his part than he eventually provided by retaining counsel and seeking to set aside the default less than a month after it was entered.

### c)   Plaintiff Provides No Citizenship Information Regarding the Doe Defendants.

The Plaintiff has provided no information in her complaint which relates to the citizenship of the Doe defendants. Although the Plaintiff may well have limited information about the Does, her failure to allege their citizenship eviscerates her ability to invoke this Court's diversity jurisdiction. To the extent Ms. Scott alleged the identity and citizenship of the Does in her response to the Motion to Dismiss, she alleges that they may be citizens of Wise County, Virginia. Dkt. No. 47-1 at p. 8. Defendant Moon is happy to take the Plaintiff at her word that she is suing fellow residents of Wise County, but such a claim defeats her own allegations of diversity of citizenship.

"District courts sitting in diversity are suspicious of John Doe defendants out of unease over whether plaintiffs purposely named John Does to avoid naming known defendants who would stand to destroy diversity." *Ancient Egyptian Arabic Order Nobles Mystic Shrine of N. & S. Am. & its Jurisdiction, Inc. v. Most Worshipful Prince Hall Grand Lodge*, No. 3:09cv521, 2009 U.S. Dist. LEXIS 108027, at *6 (E.D. Va. Nov. 19, 2009). "Sound authority supports the general proposition that the 'John Doe' practice is unwarranted in diversity cases." *Johnson v. Gen. Motors Corp.*, 242 F. Supp. 778, 779 (E.D. Va. 1965). "While the Plaintiffs' naming of John Doe defendants does not destroy diversity jurisdiction automatically, the Plaintiffs must at least show that the John Doe defendants are citizens of states other than the Plaintiffs' states of citizenship." *Most Worshipful Prince Hall Grand Lodge* at *6, citing *Ward v. Connor*, 495 F. Supp. 434, 438 (E.D. Va. 1980).

It is the Plaintiff's burden to "establish the citizenship of the various John Doe defendants." *Sandler v. W. State Hosp*., No. Civ. A. 5:02CV00107, 2003 U.S. Dist. LEXIS 20727, 2003 WL 22722870, at *3 (W.D. Va. Nov. 18, 2003). A claim that fails to provide the Court with information sufficient to invoke diversity jurisdiction must be dismissed. "[T]he action is subject to dismissal unless the John Does are eliminated or their citizenship affirmatively alleged." *Johnson*, 242 F. Supp. at 779.

If the Plaintiff is correct that the Doe defendants are Wise County residents, then this Court has no diversity jurisdiction. If the Plaintiff is incorrect, it is still incumbent upon her to provide sufficient information to establish the existence of diversity jurisdiction, and her failure to adequately allege the citizenship of the Does is itself fatal to her claim.

### d) Aggregation of Claims does not Create Diversity Jurisdiction.

Plaintiff baldly states that "The aggregated claims requirements set by law have also been met." Dkt. 47, p. 7. But the Plaintiff seeks only $50,000 from Defendant Moon. Dkt. No. 2, p. 6. Ms. Scott is therefore not attempting to aggregate multiple claims against a single defendant, but rather to aggregate all her claims against all defendants (including the unidentified Does) in order to reach the "amount in controversy" threshold.

The Fourth Circuit permitted aggregation of multiple smaller claims against a single defendant in order to reach the "amount in controversy" threshold in *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). Aggregation of claims is ordinarily permitted only against a single defendant. See, e.g., *Soley v. Wasserman*, 2011 U.S. Dist. LEXIS 109470, at *18 (S.D.N.Y. Aug. 11, 2011), *Delk v. Moran*, Civil Action No. 7:16cv00554, 2019 U.S. Dist. LEXIS 24730, at *3 n.1 (W.D. Va. Feb. 15, 2019). Although claims committed by conspirators or jointly liable parties can occasionally also be aggregated, "where the liability alleged is separate, rather than

joint, aggregation is not permitted even if the claims arise out of the same transaction." *Slumber Parties, Inc. v. Cooper*, Civil Action No. RDB-12-00791, 2012 U.S. Dist. LEXIS 98198, at *18-20 (D. Md. July 16, 2012), citing *Ex Parte Phoenix In. Co.*, 117 U.S. 367, 369, 6 S. Ct. 772, 29 L. Ed. 923 (1886). The Fourth Circuit has further held that "[a]ggregation is keyed to the type of recovery, not the factual relatedness of the claims." *Liberty Mutual Fire Insurance Co. v. Hayes*, 122 F.3d 1061 (4th Cir. 1997).

In this case, the Plaintiff has made clear what relief she seeks: $50,000 from Mr. Moon, and separate sums from various other defendants. Dkt. No. 2, p. 6. She does not allege conspiracy or joint and several liability. Thus, aggregation of the Plaintiff's claims against multiple defendants is impermissible and the threshold of $75,000 in damages for diversity jurisdiction has not been met.

**e) This Court Lacks Personal Jurisdiction over Mr. Moon.**

The Plaintiff makes all manner of factual allegations in her response to the Motion to Dismiss, some of which are unsourced and most of which are unsupported by any corresponding allegation in the complaint.

As an initial matter, "a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). However, "the burden [is] on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "A threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; [the] plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005).

As noted above with respect to the discussion of inadequacies of service of process and process itself in this matter, defects in the summons and the service of that summons may also deprive this Court of personal jurisdiction over Mr. Moon, even if such jurisdiction could otherwise exist if the summons was proper. "[A] summons not issued and signed by the Clerk with the seal of the court affixed thereto fails to confer personal jurisdiction over a defendant even if properly served." *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 570 (3d Cir. 1996).

The Complaint in this matter is largely devoid of allegations relating to Mr. Moon, much less allegations that relate to this Court's personal jurisdiction over him.[2] Paragraph 46 of the Complaint alleges that Mr. Moon sent an email to a Social Worker, but does not contain the identity of the social worker, the social worker's location, or any other information. Paragraphs 66 and 76 allege that Mr. Moon maintains a website and posts information on that website. Such allegations and others which fail to allege Mr. Moon undertook any act in or plausibly targeted at the Western District of Virginia are insufficient to establish this Court's personal jurisdiction over him. The Plaintiff's Response at Dkt. No. 47 contains numerous additional allegations, including:

1. That Mr. Moon is a registered Republican with a domicile in Florida;

2. That Mr. Moon lives at his mother's home in Florida;[3]

3. That Mr. Moon "has significant business presence in Florida;"

---

[2] Defendant Moon has requested that his Motion to Dismiss be construed as a Motion for a More Definite Statement if the Court is not inclined to dismiss outright at this juncture.

[3] To the extent that the Plaintiff now alleges Mr. Moon's mother's residence is also Mr. Moon's domicile, and claims to have verified his voter registration in Florida, the Plaintiff undercuts her own arguments in favor of serving him via an electronic mailbox rather than at his "place of abode." Because voter registrations are tied to residential addresses, she also undercuts arguments about being unable to locate any physical address at which to serve Mr. Moon other than the Kwik Pack & Ship.

    4.   That Mr. Moon "targeted the social harm and social abuse alleged in the Complaint (¶72,

        78) toward the Plaintiff in her neighborhood, local area, local county and state of

        residence as well (Wise County, Virginia)."

See Dkt. No. 47, p. 8 *et seq.*

      Neither the allegations in the Complaint nor the Plaintiff's allegations in her response to

the Motion to Dismiss are sufficient to establish a *prima facie* basis for this Court to exercise

personal jurisdiction over Mr. Moon. To the extent that Ms. Scott alleges that Mr. Moon

generally maintains a website, she fails to allege that the website targets Virginia or to allege

facts which would make such a claim of targeting plausible. To the extent that Ms. Scott alleges

Mr. Moon emailed a social worker, the Plaintiff fails to allege the identity or location of the

social worker, and further fails to establish how such an incidental or ancillary contact with a

social worker via email could lead to the existence of personal jurisdiction, even if true. To the

extent that Ms. Scott argues Mr. Moon has ties to Florida, she undercuts her arguments for a

Court in Virginia to exercise jurisdiction over him.

      Even if this Court were to hold that Ms. Scott had made out a *prima facie* case for the

existence of personal jurisdiction, it remains her burden to *prove* the existence of such

jurisdiction by a preponderance of the evidence. *New Wellington Fin. Corp.*, 416 F.3d at 294 n.5.

Under the circumstances of this case, Defendant Moon respectfully submits that an evidentiary

hearing on the issue of jurisdiction would be appropriate if the Court is not yet prepared to rule.

An evidentiary hearing would minimize the expenditure of resources of counsel and the Court in

this matter and prevent the possibility of entering a judgment that may ultimately be void.[4]

---

[4] A judgment is *void ab initio* "if the court that rendered it lacked jurisdiction of the subject
matter, or of the parties, or if it acted in a manner inconsistent with due process of law." 11

f)  **This Court Lacks Subject Matter Jurisdiction**

This Court has two potential bases upon which to exercise subject matter jurisdiction. First, this Court could exercise subject matter jurisdiction if there was complete diversity in citizenship and the Plaintiff reasonably expected an award of over $75,000 from any defendant. Second, this Court could exercise subject matter jurisdiction if the Plaintiff presented a federal cause of action. Here, the Plaintiff has not pleaded complete diversity or satisfied the "amount in controversy" threshold for the exercise of diversity jurisdiction, as set forth above. Neither has the Plaintiff established that she presents a federal cause of action *against Mr. Moon*.

Although the Plaintiff's response to the Motion to Dismiss extensively discusses Constitutional violations she alleges she suffered at the hands of Mr. Moon, and contains arguments relating to her belief that Mr. Moon is a state actor, the Complaint does not appear to seek relief against Mr. Moon for ostensibly federal causes of action. And even if the Complaint did seek such relief, this Court would not have jurisdiction to grant it.

The Complaint begins with the heading "CAUSE OF ACTION I - Violation of Constitutional Rights by Defendant Wise County Department of Social Services." Dkt. No. 2, p. 8. Thereafter, the Plaintiff details various ways she feels her Constitutional rights were violated by the Wise County Department of Social Services. All such claims were dismissed by this Court at Dkt. No. 14. The Plaintiff argues for the first time in her response to the Motion to Dismiss that two paragraphs in her complaint allege that Mr. Moon is responsible for the violations of her Constitutional rights, despite the complaint's heading which appears to indicate she only seeks to

Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 2862, at pp. 198-200 (1973).

hold the Wise County Department of Social Services Responsible for such violations.[5] Dkt. No. 47, p. 8 and p. 11, each of which cites paragraphs 46 and 52 of the Complaint.

The two paragraphs of the complaint that Ms. Scott cites to support her belief that this Court has federal question jurisdiction contain the same operative sentence relating to Mr. Moon: "Defendant Joshua Moon, John Doe 1, and John Doe 2 gave a social worker alleged information about the Plaintiff using the social worker's employee email address." Ms. Scott does not explain how contacting an unnamed social worker at an email address constitutes a federal cause of action in either her complaint or her response to the Motion to Dismiss. Undersigned counsel is aware of no case holding that providing information to a social worker, without (much) more, constitutes a federal cause of action.

"[F]ederal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008), citing 13 Charles Alan Wright, et al., Federal Practice & Procedure § 3522 (2d ed. 1984 & Supp. 2008). Constitutional violations are ordinarily adjudicated in federal court under 42 U.S. Code § 1983, which states that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

---

[5] Because the complaint is so barren of allegations relating to Mr. Moon's alleged status as a state actor and appears not to seek relief against him as a state actor under 42 U.S. Code § 1983, this memorandum will not address at length any possible defenses Mr. Moon might have to a hypothetical complaint that did raise such claims. If the Court wishes to consider the allegations raised in the Ms. Scott's briefing related to alleged claims against Mr. Moon under 42 U.S. Code § 1983 as a supposed state actor, Mr. Moon requests leave to supplement this brief and reiterates that the lack of clarity in the complaint is among the reasons he moved in the alternative for a more definite statement of Ms. Scott's allegations against him at Dkt. No. 26.

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." In this case, Ms. Scott has not alleged that Joshua Moon acted under color of any statute, much less identified the statute at issue. As such, she has entirely failed to meet her obligation to "demonstrate the federal court's jurisdiction over the matter." *Strawn*, 530 F.3d at 296.

The Plaintiff separately claims that the Intentional Infliction of Emotional Distress is a federal cause of action. Dkt. No. 47 at p. 14.[6] However, although "substantive claims for intentional infliction of emotional distress under Virginia law need not be pled [in federal court] with the degree of specificity required by Virginia courts," *Faulkner v. Dillon*, 92 F. Supp. 3d 493, 501 (W.D. Va. 2015) (internal citations omitted), the procedural differences between pleading a Virginia claim in federal Court and pleading a Virginia claim in federal court do not transform the Plaintiff's cause of action into a federal claim. Nor does the Plaintiff cite to any federal statute which she believes gives this Court jurisdiction to hear a claim for Intentional Infliction of Emotional Distress.

### g) Alternatively, even if Jurisdiction did Lie for Ms. Scott's Claims, this Court is not the Most Convenient Forum.

Ms. Scott appears not to have addressed Defendant Moon's *forum non conveniens* arguments.[7] "A *forum non conveniens* dismissal must be based on the finding that, when

---

[6] Ms. Scott also asserts that her claim for Intentional Infliction of Emotional Distress is not time-barred. See Dkt. No. 47, p. 14. However, Plaintiff fails to identify the date on which her cause of action allegedly accrued in 2018, and the assertion that any cause of action accrued in 2018 is inconsistent with allegations elsewhere in her various filings that the course of conduct she alleges Mr. Moon engaged in began in 2017.

[7] Ms. Scott's venue arguments appear to be based on unsupported and even facially implausible allegations that Mr. Moon's website "targets" Virginia. Defendant Moon respectfully submits that the Plaintiff's allegations and argument relating to venue in the Western District of Virginia

weighed against plaintiff's choice of forum, the relevant public and private interests strongly

favor a specific, adequate, and available alternative forum." *Kontoulas v. A.H. Robins Co.*, 745

F.2d 312, 315 (4th Cir. 1984), citing *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245

(5th Cir. 1983). "The moving party bears the burden of showing that an adequate alternative

forum exists." *Jiali Tang v. Synutra Int'l, Inc*., 656 F.3d 242, 248 (4th Cir. 2011), citing *Galustian

v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010).

In this case, even assuming, *arguendo*, that this Court has the ability to exercise personal

jurisdiction over Defendant Moon or subject matter jurisdiction over this case, there is no reason

to believe that this Court is the best forum for adjudicating the Plaintiff's claims. To the contrary,

this Court is convenient only for the Plaintiff, who has elected to bring numerous claims in the

courts of Southwest Virginia against Mr. Moon and others. Aside from conclusory allegations

that Mr. Moon owns a website and emailed a social worker, Ms. Scott has failed to establish why

Wise County is the best forum for this action to be tried. The Courts of the European Union

(where Defendant Moon actually resides) and Florida (where the Plaintiff asserts he resides) are

both adequate *fora* to adjudicate any claims Ms. Scott wishes to bring forward. Because Ms.

Scott has repeatedly attempted to use a Florida Kwik Pack & Ship as her jurisdictional "hook"

for a targeted and years-long litigation campaign in state and federal courts against an individual

who has never lived in Virginia or conducted business in the Commonwealth, public policy may

also favor a resolution in Florida. In the Sunshine State, an individual who files a suit "against

another person or entity without merit and primarily because such person or entity has exercised

---

are almost indistinguishable from her arguments that this Court has personal jurisdiction over
Mr. Moon. If the Court declines to dismiss this case outright or on the ground of *forum non
conveniens*, this Court could address the question of whether to transfer this case to another U.S.
District Court following an evidentiary hearing on the question of jurisdiction.

the constitutional right of free speech" is subject to sanctions under state law. Fla. Stat.

768.295(3). Thus a dismissal of this matter on *forum non conveniens* grounds would not only

facilitate a more convenient resolution of this case for Mr. Moon, but would force the Plaintiff to

reevaluate the claims which she has admittedly filed in this and various other Virginia courts in

order to chill speech on a website that she dislikes.

**h) The Plaintiff has not Made out a Claim for Intentional Infliction of Emotional Distress.**

As this Court recently held in *Leitner v. Liberty Univ., Inc.*, No. 6:19-cv-00029, 2020 U.S.

Dist. LEXIS 228143, at *42 *et seq.* (W.D. Va. Dec. 4, 2020):

> Claims of intentional infliction of emotional distress carry a "disfavored status" under
> Virginia law. *A.H. v. Church of Christ, Inc.*, 297 Va. 604, 831 S.E.2d 460, 476 n.18 (Va.
> 2019). To state a claim for intentional infliction of emotional distress ("IIED"), the
> plaintiff must plead the following: (1) the defendant's conduct was intentional or reckless;
> (2) the conduct was outrageous or intolerable; (3) there was a causal connection between
> the defendant's conduct and the plaintiff's emotional distress; and (4) the resulting
> emotional distress was severe. *SuperValu, Inc. v. Johnson*, 276 Va. 356, 369-70, 666
> S.E.2d 335 (Va. 2008). It is "not enough" for conduct to be "[i]nsensitive and
> demeaning" to satisfy the second element of an IIED claim; rather, it must be "so
> outrageous in character, and so extreme in degree, as to go beyond all possible bounds of
> decency, and to be regarded as atrocious, and utterly intolerable in a civilized
> community." *Eldib v. Bass Pro Outdoor World, L.L.C.*, 654 F. App'x 620, 621 (4th Cir.
> 2016) (per curiam) (quoting *Harris v. Kreutzer*, 271 Va. 188, 624 S.E.2d 24, 33 (Va.
> 2006)).

Here, the Plaintiff's assertions, even if accepted as true, create no plausible claim for Intentional

Infliction of Emotional Distress against Mr. Moon or anyone else.

Plaintiff cites Paragraphs 66-80 of her Complaint as grounds for her belief that Mr. Moon

is liable for her emotional distress. Dkt. No. 47, p. 12. Defendant Moon will address each

paragraph in turn below.

Paragraph 66 claims that Mr. Moon owns a website. Defendant Moon's ownership of a

website is insufficient as a matter of law to give rise to any liability for Ms. Scott's emotional

distress. Paragraph 67 alleges that a website Mr. Moon owns contains information about the Plaintiff and court documents she has filed. Such an allegation is also legally insufficient to give rise to a claim for emotional distress.

Paragraph 68 is a sentence that fails to identify any specific actor who undertook any specific action. Paragraph 69, 70, 71, 74, and 75 do not allege action on the part of Mr. Moon. Paragraph 72 mentions Mr. Moon's name, but fails to allege any action on his part and contains only conclusory allegations that various individuals had a "plan" to engage in unspecified conduct. Paragraph 73 indicates that Mr. Moon is "responsible for contributing" to a phone call, but does not indicate how he allegedly "contributed" to the phone call in question.

Paragraph 76 alleges that Defendant Moon owns a website, and contains conclusory and legally incorrect allegations relating to immunity under Section 230 of the Communications Decency Act. That same paragraph alleges that Defendant Moon has twice posted Ms. Scott's address on a website, and that he has "participated by posting comments and information… about the Plaintiff." Such allegations that Mr. Moon has posted comments on a website likely fail to constitute any tortious conduct on his part at all, but especially fail to rise to the level of demonstrating Mr. Moon went beyond insensitivity to disregard the mores of a civilized society.

Paragraph 77 is a legal conclusion that the Plaintiff suffered severe emotional distress, but also indicates that she was filled with "anger and rage" rather than despondency or humiliation. Paragraph 78 is a legal conclusion about the alleged "common interest" various defendants have in causing the distress mentioned in paragraph 77. Paragraph 79 alleges that the Plaintiff is not responsible for the actions of other parties. Paragraph 80 alleges that Joshua Moon can identify individuals who are being sued as Does.

Simply put, none of the allegations in paragraphs 66-80 of the Plaintiff's complaint show that Ms. Scott was a victim of Intentional Infliction of Emotional Distress inflicted by anyone at all. Instead, the Plaintiff's own Complaint contains only allegations that she is filled with "anger and rage." Even assuming, *arguendo*, that Ms. Scott could demonstrate Intentional Infliction of Emotional distress by some set of individuals, however, she has entirely failed to allege what actions Mr. Moon took to cause her distress. Those few actions that Ms. Scott allegations Mr. Moon undertook are benign, time-barred, legally insufficient to give rise to liability, or some combination of the foregoing.

   **i)   Allegations of "True Threats" and "Cyberbullying" are absent from the Complaint and Insufficient as a Matter of Law.**

Pages 13-14 of the document filed at Dkt. 47 contain a section that alleges the Plaintiff is a victim of "cyberbullying" and that such "cyberbullying" is a true threat. Such allegations do not appear in the Complaint, and the Plaintiff has not cited to any paragraphs in the Complaint to support her allegations of cyberbullying.

The crux of the Plaintiff's "cyberbullying" allegations appears to be that she believes documents posted on "Pacer" should not be released to the public on various websites. Plaintiff appears not to understand that "Pacer" is an acronym that denotes a system that allows for "Public Access" to "Court Electronic Records."[8] Nor does the Plaintiff reconcile her belief that documents posted on Pacer cannot be copied or posted elsewhere with the Supreme Court's holding in *Nixon v. Warner Communications*, 435 U.S. 589, 597, 98 S. Ct. 1306, 1312 (1978), that "courts of this country recognize a general right to inspect *and copy* public records and documents, including judicial records and documents." (emphasis added).

---

[8] https://pacer.uscourts.gov/

Ms. Scott may not have yet been declared a vexatious litigant, but she is nevertheless a particularly persistent litigant in this Court and others in Southwest Virginia. She has elected to sue numerous defendants on multiple occasions, and has now sued Mr. Moon no less than five times in three courts in recent years. This Court has previously recognized in *Scott v. Carlson et al.* (Case No. 2:18-cv-00047-JPJ-PMS, Dkt. Nos. 5-6), *Scott v. Carlson* (Case No. 2:17-cv-10011-JPJ-PMS, Dkt. Nos. 18-19), and *Scott v. Wise County Housing Authority* (Case No. 2:18-cv-00045-JPJ-PMS, Dkt. Nos. 3-4) that the Plaintiff is in the habit of filing information publicly which she either should not publicly file under the rules of court or later wishes to seal.

Although it is understandable that Ms. Scott now feels embarrassment at the information she has filed with the Court in an attempt to seek six figure judgments to which she is not legally entitled, republication of Ms. Scott's voluminous litigation history is Constitutionally protected activity. The Plaintiff's voluntary disclosure of information does not overcome the presumption of public access to judicial documents, and "private interests in certain personal information" are not protectable once that information becomes relevant in a lawsuit. See *Stephens v. United States*, No. 1:15-cv-00726 (LMB/IDD), 2015 U.S. Dist. LEXIS 107523, at *24 (E.D. Va. Aug. 14, 2015), citing *In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir. 1984), *Rushford v. The New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988), and *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986).

**j)   Section 230 Immunity Applies.**

Ms. Scott asserts at Dkt. No. 47, p. 14 and Dkt. No. 47-1, p. 8-9 that Mr. Moon is not immune from liability under Section 230 of the Communications Decency Act (47 U.S.C. § 230). Her arguments run headlong not only into her own allegations in the complaint, but also

the caselaw she herself cites and the universal holdings of other courts that have interpreted Section 230.

The Plaintiff chiefly cites *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) and *Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997), for the proposition that "Plaintiff Scott adequately alleged in the Complaint in this case that Defendant Moon permitted illegal defamation on his website from other users." Dkt. No. 47-1, p. 8. Plaintiff Scott further argues that "Defendant Moon [does] not qualify for immunity because he interacts on threads, develops content, distributes information, and has the ability to edit content on threads." *Id*.

Leaving aside the issue of whether Mr. Moon has permitted "illegal defamation on his website from other users,"[9] such material is exactly what Section 230 protects him from being held liable for. In *Nemet*, the Plaintiff sued for comments posted online that it alleged were "false and harmful to its reputation." The *Nemet* Plaintiff even argued that certain online postings were fabricated out of wholecloth by the defendant. *Nemet*, 591 F.3d at 259 (4th Cir. 2009). The Fourth Circuit rejected Nemet's claim on the basis that "[s]tate-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online," and that "Nemet's well-pled allegations allow us to infer no more than 'the mere possibility' that [the defendant] was responsible for the creation or development of the allegedly defamatory content at issue." *Nemet, 591 F.3d at 254 and 260 (4th Cir. 2009)*. In *Zeran*, the Plaintiff's suit related to allegedly defamatory statements posted on an online bulletin board. The Fourth Circuit rejected Zeran's

---

[9] The Plaintiff has not adequately alleged defamation by any individual or set forth the basis for a defamation claim in this matter.

claims that the bulletin board's owner was liable for defamatory content under multiple theories of liability, all of which were preempted and barred by Section 230.

Tha Plaintiff further attempts to impose liability on Mr. Moon because he allegedly has the ability to edit content on kiwifarms.net.[10] Such an argument is unavailing. Both *Nemet* and *Zeran* speak to Section 230's legislative intent to *encourage* Internet Service Providers to edit and filter content. *Zeran v. Am. Online, Inc.*, 129 F.3d at 331 ("Another important purpose of § 230 was to encourage service providers to self-regulate the dissemination of offensive material over their services."), *Nemet*, 591 F.3d at 258 (4th Cir. 2009). ("§ 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.")

### k) Res Adjudicata, Collateral Estoppel, and/or Claim Preclusion Bar Ms. Scott's Claims.

Ms. Scott's own filings demonstrate that *Res Adjudicata*, Collateral Estoppel, or Claim Preclusion bar her claims in this matter. Dkt. No. 47, p. 14 et seq. The Plaintiff begins her own preferred history of her various claims against Mr. Moon by detailing her initial suit in the Wise County General District Court in May 2017. Dkt. No. 47, p. 16. Following a discussion of her eventual appeal to the Wise County Circuit Court and decision to "transfer" her claims to this Court, she alleges that this Court has already found Mr. Moon qualifies for immunity under 47 U.S.C. § 230. *Id.*, p. 17. She further states that "This is an IIED case, not Appropriation,

---

[10] The Plaintiff further argues that Mr. Moon occasionally posts content himself on Kiwifarms.net. Even if the Plaintiff's allegation that Mr. Moon posts on the site personally are true, the Plaintiff has not identified what allegedly defamatory material Mr. Moon posted himself, and her claim in this matter is not a defamation claim.

Defamation or other Torts. Plaintiff Scott has not previously filed an IIED case against

Defendant Moon." *Id*. at p. 18.[11]

Unfortunately, however, the Plaintiff's own filings also demonstrate that she is suing Mr.

Moon for one continuous course of conduct. She alleges at Dkt. No. 47, p. 8 that she is suing Mr.

Moon for a course of conduct that she alleges "started in 2017 and has continued to the present

time." Virginia law, however, squarely prohibits Ms. Scott from continuing to litigate the same

course of alleged conduct under different legal theories or successive causes of action.

Originally a creature of the common law, Virginia has now codified the doctrine of "Res

Judicata Claim Preclusion." Virginia Supreme Court Rule 1:6(a) states that:

> A party whose claim for relief arising from identified conduct, a transaction, or an
> occurrence, is decided on the merits by a final judgment, shall be forever barred from
> prosecuting any second or subsequent civil action against the same opposing party or
> parties on any claim or cause of action that arises from that same conduct, transaction or
> occurrence, whether or not the legal theory or rights asserted in the second or subsequent
> action were raised in the prior lawsuit, and regardless of the legal elements or the
> evidence upon which any claims in the prior proceeding depended, or the particular
> remedies sought.

Hence, whether Ms. Scott prefers to style her claims as claims for "Appropriation," as claims

for defamation, or as claims for the Intentional Infliction of Emotional Distress, the dispositive

issue is not what cause of action she alleges. Instead, the dispositive issue is whether her "claim

for relief" arises from the same "identified conduct." It is indisputable on the face of Ms. Scott's

own filings that her claim for relief in this case arises from the same conduct that she alleges Mr.

Moon began in 2017, which conduct has been litigated now in five lawsuits spanning three

courts.

---

[11] The Plaintiff also argues that "This case is not prohibited by the doctrine of collateral estoppel
because this is the first I.I.E.D claim that the Plaintiff has ever brought against Joshua Moon."
Dkt. No. 46, p. 15.

**IV.      Conclusion**

This Court should dismiss Ms. Scott's claims against Mr. Moon with prejudice.[12]

Alternatively, the Court should dismiss the claims under the doctrine of *forum non conveniens* or

construe the Motion to Dismiss as a Motion for a More Definite Statement pursuant to Fed. R.

Civ. P. 12(e).[13]

Respectfully submitted this the 5th day of January, 2021,

JOSHUA MOON

**By Counsel:**

/s/Matthew D. Hardin
Matthew D. Hardin, VSB #87482
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: 202-802-1948
Email: MatthewDHardin@protonmail.com

---

[12] Undersigned counsel has begun (but not yet completed) the process of drafting an appropriate request for Ms. Scott to withdraw certain filings, which request will comply with the notice and "safer harbor" requirements of Fed. R. Civ. P. 11 (c)(2). Mr. Moon intends at the appropriate juncture to file a Motion for Sanctions against Ms. Scott. Defendant Moon respectfully submits that a dismissal will not deprive this Court of the authority to impose such sanctions. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S. Ct. 2447, 2455 (1990).
[13] Undersigned counsel has attempted to address all issues raised in Ms. Scott's Complaint and in her response to the Motion to Dismiss, with the exceptions set forth in fn. 1, *supra*.  Because the Complaint and subsequent Plaintiff's filings appear to take a "scattershot approach" to pleading requirements, Defendant Moon respectfully requests leave of Court for supplemental briefing on any issue that the Court feels Mr. Moon may not have addressed. See generally *Heather M. v. Berryhill*, 384 F. Supp. 3d 928, 941 (N.D. Ill. 2019) (holding that a "scattershot approach to briefing" "destroys the clarity of a party's position.").

**<u>Certificate of Service</u>**

I hereby certify that I will file a true and correct copy of the foregoing document with the Court's CM/ECF system, which will electronically serve counsel of record. I have also deposited a true and correct copy of the foregoing document into the U.S. Mail, with First Class postage prepaid, directed to:

Melinda Scott
2014PMB87
Post Office Box 1133
Richmond, VA 23218

Dated: January 5, 2021

/s/Matthew D. Hardin
Matthew D. Hardin
*Counsel for Joshua Moon*