**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**(Big Stone Gap Division)**

MELINDA SCOTT,
Plaintiff,

v.

WISE COUNTY DEPARTMENT OF SOCIAL SERVICES, *et al*.,
Defendants.

**Case No. 2:20-cv-00014-JPJ-PMS**

**Reply Memorandum of Law In Further Support of Motion for an Order to Show Cause**

NOW COMES Joshua Moon, and submits this Reply Memorandum of Law in Further Support of his Motion for an Order to Show Cause.

## I. Introduction

This Court is by now largely familiar with the voluminous history of the Plaintiff's litigation against Mr. Moon, at least in part due to Ms. Scott's own chronicle of her litigation filed at Dkt Nos. 29 and 47. Ms. Scott has now sued Mr. Moon at least five times in three courts, despite her own admission that she'd never even heard of him prior to 2017. See Dkt. Nos. 35 and 35-4. Further, she has admitted in various of her own filings and in correspondence to undersigned counsel that all of her suits could have been avoided, if only Mr. Moon had consented to remove any discussion of her from a website he maintains. See Dkt No. 41, p. 5.[1]

In this claim, ostensibly for the Intentional Infliction of Emotional Distress, Ms. Scott obtained her first ever legal victory against Mr. Moon. Her victory came, however, not after a

[1] Ms. Scott repeatedly claims that any nonconsensual discussion about her on a website is the tort of "Appropriation." Mr. Moon, of course, disagrees, and points out that in a state court suit for that purported cause of action Ms. Scott did not prevail. Nevertheless, Ms. Scott has attempted to recycle essentially the same allegations into subsequent complaints, and to claim that new causes of action based on the same conduct are not barred by *res judicata*, claim preclusion, or collateral estoppel.

trial on the merits but as a result of obtaining an order entering default against the defendant. Ms. Scott has fought vociferously ever since to maintain that entry of default. She has done so despite facially defective service and process in this matter, and now fights even harder to hide the supposed evidence of her good faith in filing this litigation. The Plaintiff's efforts to maintain default have not only proven too much about her motives in filing this case, but have also forced her to admit in two of her newest filings that she knowingly served Mr. Moon at an address other than his place of abode[2] and that she intentionally hid the existence of this suit even from the family members with whom she claims Mr. Moon resides. Dkt Nos. 47, p. 8 and Dkt. No. 54.[3]

It appears increasingly likely based on the Plaintiff's own filings in this matter that this case began not only with defective service, but with service so suspicious that it raises grave concerns whether the Plaintiff may have attempted to perpetrate a fraud upon either this Court or an unserved party. Having purported to "serve" Mr. Moon at a Florida Kwik Pack & Ship location rather than at Mr. Moon's place of abode or at the residence that Ms. Scott claims Mr. Moon votes from, Ms. Scott swore out an affidavit that Mr. Moon was properly served and obtained entry of default. Ms. Scott now attempts to use that entry of default as a shield behind which to hide the lack of evidence or even plausibility for her factual claims against Mr. Moon,

---

[2] To be clear, Mr. Moon asserts that he is a resident of the European Union and does not reside in Pensacola, Florida. However, the Plaintiff claims repeatedly in this matter (and previously asserted in at least two other federal cases against Mr. Moon) that Mr. Moon resides in Pensacola. Taking the plaintiff at her word that she believes Mr. Moon is a resident of Pensacola, however, her decision to suddenly change tack and "serve" him in Fort Walton Beach is inscrutable at best and suspicious at worst.

[3] Lolcows, LLC, a now-defunct Florida Limited Liability Company, has a registered agent on file with the Florida Secretary of State. Rather than serve the registered agent for acts allegedly committed by the LLC, however, Ms. Scott also elected to serve an electronic mailbox, and then alleged that unnamed employees at a mailing center are either employees or registered agents of Mr. Moon personally. Dkt. No. 47 p. 3 *et seq*. Ms. Scott also makes the outlandish accusation that Mr. Moon's failure to renew a business registration for an LLC demonstrates that he is being evasive in this matter, even though Mr. Moon and not the LLC is named as a defendant.

and to avoid the requirement of proving (rather than merely asserting) her good faith in bringing this litigation. This Court cannot permit her to succeed in that endeavor.

## II. Facts

Ms. Scott has sued Mr. Moon at least five times. A brief history is set forth below because the facts of Ms. Scott's previous claims illustrate the basis for Mr. Moon's concerns about her good faith in this claim, both with respect to its merits and with respect to Ms. Scott's decision to "serve" an electronic mailbox and obtain entry of default based on such service.

First, the Plaintiff filed a claim for $15,000 in the Wise County General District Court for "Appropriation." *Scott v. Moon*, Case No. GV17000529-00. That claim was filed 4/6/2017 and dismissed on 6/22/2017. It is unknown how Ms. Scott claimed to serve Mr. Moon, but he did not appear at trial and nevertheless prevailed. The publicly-available docket in the Wise County General District Court lists a Pensacola address for Mr. Moon.

Second, the Plaintiff appealed her claim to the Wise County Circuit Court. That case, *Scott v. Moon*, Case No. CL17000827-00, appears to have been filed in the Circuit Court on 11/2/2017, despite the passage of over four months since the judgment was entered in the General District Court. Nevertheless, the publicly-available online docket from the Wise County Circuit Court reflects that a trial was held on 11/30/2017, and a written final judgment was again entered for the defendant on 12/14/2017.

Third, the Plaintiff sued Mr. Moon in this Court. On 11/14/2018, the Plaintiff filed a complaint in this Court captioned *Scott v. Carlson et al.*, Case No. 2:18-cv-00047-JPJ-PMS. This time, Ms. Scott elected to sue for six figures, rather than merely five. Through the magic of "transferring" her claims to federal court, Ms. Scott suddenly re-appraised her claims and decided her damages had increased substantially. Although she had previously litigated a case

based on substantially similar or even identical conduct in state court with a demand for $15,000, those claims reappeared in federal court with a demand for $240,000. The docket reflects that Ms. Scott's claim in *Scott v. Carlson et al*., Case No. 2:18-cv-00047-JPJ-PMS, was based upon alleged diversity jurisdiction, and that it was dismissed on 12/12/2018. Although Ms. Scott never served the defendants in that matter because her complaint was dismissed by the Court before service could be undertaken, she again listed an address in Pensacola, Florida for Mr. Moon. In that case, she alleged that Mr. Moon had violated her Fourth Amendment rights, defamed her, and insulted her intelligence. See *Scott v. Carlson et al*., Case No. 2:18-cv-00047-JPJ-PMS, Dkt. No. 2, p. 6 *et seq*.[4] Even more telling, the Plaintiff's claim for relief included a demand to have material mentioning her removed from the internet, and she also sought monetary damages from Mr. Moon and others for alleged emotional distress. *Id.* at p. 12.

This Court's opinion dismissing *Scott v. Carlson et al*., Case No. 2:18-cv-00047-JPJ-PMS, noted that it was her eighth *pro se* case in the past two years (as of 2018). See Dkt. No. 3, p.1, fn. 1. The Court expressly questioned whether it had personal jurisdiction over Mr. Moon and the other out-of-state defendants. Dkt. No. 3, p. 8, fn. 5. Ms. Scott appealed to the Fourth Circuit and to the U.S. Supreme Court, but both declined to grant her the relief she sought.

Undeterred, Ms. Scott proceeded to file her fourth claim against Mr. Moon: *Scott v. Moon et al*., Case No. 2:19-cv-00005-JPJ-PMS. That suit, filed on December 28, 2018, again sought to invoke this Court's diversity jurisdiction. Again, Ms. Scott listed a Pensacola, Florida address for Mr. Moon. Dkt. No. 2, p. 2. She claimed in that case that Mr. Moon was committing the torts of "Invasion of Privacy: Appropriation," "Invasion of Privacy: Publication of Private Facts,"

---

[4] In this section, docket numbers will cite to the docket of the case being discussed rather than to the docket in this case.

"Defamation," and "Malice." She also claimed damages arising from "Emotional Distress due to Invasion of Privacy and Defamation." Dkt. No. 2, p. 4 *et seq*. Notably, Ms. Scott's alleged damages significantly escalated *again* in her fourth suit. This time, she sought a grand total of $301,000 from Mr. Moon, in addition to injunctive relief ordering the removal of all content relating to her from the internet. Dkt. No. 2, p. 14.

This Court dismissed *Scott v. Moon et al*., Case No. 2:19-cv-00005-JPJ-PMS, on 1/24/2019. Dkt No. 7. This Court expressly noted that its decision was the second dismissal of Ms. Scott's claims based on statements allegedly made on the same website. Dkt. No. 6, p. 1, fn. 2. The Court also noted, for the second time, its serious concerns whether it had personal jurisdiction over the out-of-state defendants Ms. Scott was suing. Dkt. No. 6, p. 8, fn. 6. As she is wont to do, Ms. Scott again appealed to the Fourth Circuit and to the Supreme Court of the United States. Both declined to grant her any relief.

Ms. Scott's fifth claim against Mr. Moon is the instant case pending before this Court, which was filed on 7/8/2020. For the first time in this Court, Ms. Scott listed an address in Fort Walton Beach, Florida for Mr. Moon. Also for the first time, this Court allowed her to file *in forma pauperis* without simultaneously dismissing the complaint pursuant 28 U.S.C.51915(e)(2)(B)(ii). In this fifth case, Ms. Scott asserted both diversity and federal question jurisdiction, and repeated her previous claims that Mr. Moon had caused her emotional distress. And in this claim, Ms. Scott "upped the ante" *again* by increasing her demand for a judgment to never-before-seen heights. In this litigation, Ms. Scott seeks judgments against multiple defendants in an aggregate total of $675,000.

While Ms. Scott's visions of grandeur may have elevated her appraisal of her own damages from an initial claim in state court for $15,000 to a current claim in federal court for

$675,000, the underlying merits of Ms. Scott's claims against Mr. Moon have not improved or even substantively changed since 2017. Perhaps knowing the fate that would await her newest lawsuit if Mr. Moon was able to mount a defense, Ms. Scott elected in this suit to "serve" an electronic mailbox in Fort Walton Beach, Florida. Dkt. Nos. 4-5. She then proceeded to swear that Mr. Moon was properly served, and to obtain entry of default against him. Dkt. Nos. 19-20. Armed with entry of default, Ms. Scott felt invincible: she proceeded to file multiple motions to compel discovery from Mr. Moon (Dkt. Nos. 31 and 41), moved to strike Mr. Moon's efforts to seek relief from default (Dkt. No. 29), moved to require undersigned counsel to respond to her filings immediately and over the holidays (Dkt. Nos. 36 and 49), and even moved for authorization to file electronically so that she could more easily file additional motions without the necessity of paying postage (Dkt. No. 38).

Unfortunately, in Ms. Scott's flurry of recent filings, she has confessed she knowingly and intentionally did not serve Mr. Moon at what she alleges is his place of abode. She also attempts to use the default which she obtained through knowingly improper service and a selectively-worded affidavit at Dkt. No. 18 to shield herself from any inquiry regarding the underlying factual or legal basis which would serve as good faith for her claims. This Court should decline Ms. Scott's invitation to turn a blind eye to her conduct.

## III. Standard

Federal courts have the inherent authority to punish a litigant for bad-faith behavior, but they also have the inherent authority to regulate a litigant's behavior. See *In re Weiss*, 111 F.3d 1159, 1171 (4th Cir. 1997). Sanctions may be imposed under a court's inherent power for abusive litigation practices in any proceeding, civil or criminal. *Chambers v. NASCO Inc.*, 501 U.S. 32, 58, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). "Courts, therefore, have inherent discretion

to impose sanctions, which are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Carefirst of Md., Inc. v. First Care, P.C.*, 422 F. Supp. 2d 592 (E.D. Va. 2006) (quoting *Link v. Wabash R. Co*., 370 U.S. 626, 630-1, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

This Court's power to regulate conduct of litigants, including by issuing an order to show cause under its inherent power, is a separate issue from its authority to issue Rule 11 sanctions. Unlike Rule 11, which focuses on specific abuses and is not limited to willful conduct, the inherent power reaches all litigation misconduct done in bad faith. *Chambers v. NASCO Inc.*, 501 U.S. 32, 58, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Because "a finding of bad faith is *sine qua non* to the imposition of inherent power sanctions," Joseph, *Sanctions: the Federal Law of Litigation Abuse* § 27(A), this Court must determine whether the Plaintiff is acting in good or bad faith. If this Court finds "that fraud has been practiced upon it, or that a very temple of justice has been defiled," it has the power to take appropriate action. *Chambers v. NASCO Inc*., 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

"Pursuant to its inherent powers, a court may impose sanctions against a plaintiff who has pursued a claim that is deemed to have been vexatious, wanton, or made in bad faith." *Davis v. Target Stores Div. Of Dayton Hudson Corp*., 87 F.Supp.2d 492, 494 (D. Md. 2000). But the question is not merely whether there was good faith at the time the claim was filed, becasuse good faith is a continuing obligation of any litigant. "The continuation of a claim which has become frivolous has been held to amount to 'bad faith.'" *Id.* Further, "[i]f particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214-5 (11th Cir. 1998).

## IV. Argument

It appears from the face of Ms. Scott's filings (and from the entire record in this case, and in the records of her other cases against Mr. Moon) that Ms. Scott may be acting in bad faith, without reasonable inquiry into the factual or legal basis for her claims, or in a manner that is designed solely to escalate the costs of litigation. As previously indicated in other filings, at the appropriate juncture Mr. Moon intends to file a motion under Rule 11 for relief. This, however, is not a sanctions motion. This is a motion to request that Ms. Scott show cause – if any she has – how or why she has acted in good faith or what basis she has to believe that her claims have any factual or legal support. Further, this is a motion to require Ms. Scott to explain her sudden decision to change the address she listed for Mr. Moon to Fort Walton Beach, even though she admits he is not domiciled there, in an attempt to obtain and enforce a default judgment from this Court.

Ms. Scott should welcome the opportunity to show cause at a relatively early juncture in this litigation, before Mr. Moon's litigation costs escalate (just as Ms. Scott's claims have) from five to six-figure territory. Similarly, this Court should take the opportunity early in this litigation, which the Plaintiff has already shown signs she intends to escalate or multiply, to evaluate whether there is any good faith basis for the claims which are being asserted. If the Plaintiff is acting in good faith, this Court need not resort to sanctions under its inherent power or under Rule 11. If the Plaintiff is acting in good faith, Defendant Moon need not trouble this Court with the burden of adjudicating a Rule 11 motion of his own.

By contrast, if the Plaintiff is acting in bad faith (as an increasing body of circumstantial evidence appears to show), this Court will soon need to take appropriate action to impose sanctions under its inherent authority or under Rule 11. This Court cannot equitably impose

sanctions without first issuing an order to show cause, however, or without giving Ms. Scott the opportunity to respond. "Due process requires, in the absence of extraordinary circumstances, notice and an opportunity to be heard before sanctions are imposed." *Sanctions: the Federal Law of Litigation Abuse* § 29(A). "Notice of due process entails awareness of (1) the fact that sanctions are under consideration; (2) the reasons why they are under consideration; and (3) the type of sanctions being considered." *In re Tutu Wells Contamination Litig.,* 120 F.3d 368, 37 V.I. 398 (3d Cir. 1997). This motion aims to do exactly that: to require Ms. Scott to respond to the concerns that her own filings have raised.

Defendant Moon respectfully submits that this case cries out for some sort of notice to Ms. Scott that her shifting legal and factual assertions have caught the attention of the Court, that her efforts to obtain a default using service at an "electronic mailbox" that she asserts is separate from the defendant's "place of abode" have raised concerns, and that her efforts to use a questionably-obtained entry of default to shield herself from further inquiries has led to very plausible suspicions about the motives underlying this litigation and the way in which the Plaintiff has conducted it. Further, even to the extent the Plaintiff may have had good faith for initially filing this matter, this Court should ensure that the Plaintiff's vociferous opposition to setting aside the default (even in the face of obvious defects in service) is not in violation of the Plaintiff's continuing duty of good faith, as described in *Davis v. Target Stores Div. Of Dayton Hudson Corp*., 87 F.Supp.2d 492, 494 (D. Md. 2000).

**V. Conclusion**

This Court should grant the Motion for an Order to Show Cause which is filed at Dkt. No. 53.

Respectfully submitted this the 19th day of January, 2021,

JOSHUA MOON

By Counsel:

/s/Matthew D. Hardin
Matthew D. Hardin, VSB # 87482
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: 202-802-1948
Email: MatthewDHardin@protonmail.com

**Certificate of Service**

I hereby certify that I will file a true and correct copy of the foregoing document with the Court's CM/ECF system, which will electronically serve counsel of record. I have also deposited a true and correct copy of the foregoing document into the U.S. Mail, with First Class postage prepaid, directed to:

Melinda Scott
2014PMB87
Post Office Box 1133
Richmond, VA 23218

Dated: Jan. 19, 2021

/s/Matthew D. Hardin
Matthew D. Hardin
*Counsel for Joshua Moon*