CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

OCT 12 2021

JULIA C. DUDLEY, CLERK
BY: /s/ G. Meade
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| MELINDA SCOTT, ) | |
| ) | |
| PLAINTIFF. ) | |
| ) | |
| V. ) | CL NO. 2:20cv14 |
| ) | |
| WISE CO. DSS, ) | |
| ET AL., ) | |
| ) | |
| DEFENDANTS. ) | |

## REPLY
## AND
## MOTION FOR A HEARING ON THE MERITS
## OF DEFENDANT'S MOTION

COMES NOW, the Plaintiff, Melinda Scott, and responds to Defendant Moon's "Motion to Set the Amount of the Appeal Bond" and accompanying attachment titled "Declaration of Counsel" (docket #84).

**Defendant Moon's Motion.** The Order addressing an Appeal Bond was already written by this court on September 22, 2021. Defendant Moon's "Motion to Set the Amount of the Appeal Bond" is an attempt to modify a previous order, although he cites no case law or Rule which supports presenting such a motion before this court. As typical of Defendant Moon's many motions, he simply wishes to continue to proceed under "color of law" and this recent motion is no exception to this repeated pattern of behavior exemplified by him.

**District court Order of September 22, 2021 in abeyance.** The order of September 22, 2021 issued by this district court addressing the appeal bond has (a) been recently addressed in

motions and replies now before the Fourth Circuit Court of Appeals and (b) has been appealed to the Fourth Circuit Court of Appeals. Due to these facts, the Order of September 22, 2021 is in the jurisdiction of the Fourth Circuit Court of Appeals. This puts the district court order in abeyance and it is not enforceable until the Court of Appeals responds to Plaintiff Scott's pleadings and replies which challenge the legal validity of the Order of September 22, 2021. Counsel Hardin simply cannot accept that and seeks to undermine the jurisdiction of the Court of Appeals. This district court was also briefed on the invalidity of the Motion for an Appeal Bond and the invalidity of the Order of September 22, 2021 in Plaintiff Scott's pleadings filed in the district court (Docket #68, 69, 75, 83).

Of importance is also the fact that the appeal bond Order of September 22, 2021 assessing Plaintiff Scott's appeal was written *before* the actual informal brief was filed in the Court of Appeals. It cannot be said that an Appeal was filed in "bad faith" when the brief was not even available for review. Binding legal precedent bars a district court from demanding a preview of the brief before it is filed. The US Supreme Court has ruled that "the good faith test must not be converted into a requirement of any preliminary showing of any degree of merit." (*Ellis v. United States 356 US 674 Sup. Ct. (1958)*). The district court's order, filed before the Appellant's informal brief was submitted to the court of appeals was prematurely written. In Ellis the US Supreme Court has ruled that a litigant is not legally bound to present any information to the district court showing what the appeal will contain. It is the duty of the district court to inspect the appeal brief for findings of frivolity. "It is not the burden of the Petitioner to show that his appeal has merit, in the sense that that he is bound, or even, likely to prevail ultimately" (*Coppedge v United States 369 US 438 Sup. Ct. (1962)*).

**Legal Standard of Appealing 'Final' Orders.** In his attached "Declaration of Counsel" Defendant Moon, by counsel, asserts that appealing an Order on an Appeal Bond is not possible (¶3b). Once again, Defendant's counsel is making claims contrary to the legal standards of the Fourth Circuit. He could stop wasting judicial resources with his frivolous motions that do not comply with the legal standards of the US Supreme Court and the Fourth Circuit. He errs in his motions because he does not do more than the skimpy "0.2 hours" of legal research he admits he puts into his motions (¶3a, "Declaration of Counsel"). Plaintiff Scott has to put, *on average*, 90 minutes of quality time into legal research each time she responds to Defendant Moon's frivolous motions which he writes under "color of law".

As typical of Counsel Hardin, he is projecting his own "proclivity for multiplying the proceedings in this and other courts" (¶3b, "Declaration of Counsel"). The court should take note of this manipulation displayed by Counsel Hardin in fabricating the order of events. He is the one who has repeatedly filed motions that have no basis in law and motions for an extension of time, all which could have been avoided by him taking basic steps like filing papers on time and doing his case law research appropriately before writing motions. Defendant Moon's counsel seems to be content with just making stuff up as he goes. He appears to want special privilege of bending the law and rules for his client in order to suit his feelings of entitlement.

His failure to examine adequately the case law of the Fourth Circuit is why his most recent motion contains yet another grave error: his claim that post-judgment orders are not appealable. The Fourth Circuit has stated otherwise: "[T]his court has found post-judgment orders to be 'final' for purposes of §1291 in a variety of criminal and civil contexts". (*US v Doe, 962 F. 3d. 139, Court of Appeals, 4th Circuit 2020* citing *Sportmart, Inc. v. Wolverine World Wide, Inc. 601 F.2d 313, 316 (7th Cir. 1979)*). Further, in *US v Doe* the court clarified that "[M]ost post-judgment

orders are final decisions within the ambit of 28 USC §1291 as long as the district court has completely disposed of the matter". The only orders not appealable are "ministerial or administrative" and an Order on an Appeal Bond does not fall under either of those two (2) designations: "[O]rders entered post-judgment in ordinary civil litigation...are generally appealable, unless they are ministerial or administrative, such as post-judgment discovery" (*US v Doe).*

The US Supreme Court has issued similar rulings. "Although 28 USC §1291 vests the courts of appeals with jurisdiction over appeals only from "final decisions" of the district courts, "a decision 'final' within the meaning of §1291 does not necessarily mean the last order possible to made in a case" (*Mitchell v Forsyth, 472 US 511 1985* citing *Gillespie v. United States Steel Corp., 379 U.S. 148, 152, (1964))*. The Order of September 22, 2021 was not "the last order possible to be made in a case" and is certainly still appealable, according to the legal standards of the rulings of the US Supreme Court, as noted in *Mitchell and Gillespie*. "Thus a decision of a district court is appealable if it falls within "that small class which finally determine claims of right, separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated"" (*Gillespie* citing *Cohen v Beneficial Industrial Loan Corp.*, 337 U.S., at 546). At the very heart of the Appeal Bond issue are Plaintiff Scott's "claims of right", "too important to be denied review". Certainly a litigant's rights are of utmost importance, "too important to be denied review".

**Legal standard for multiple appeals.** The Fourth Circuit has also set a legal precedent for cases in which litigants filed multiple appeals to the Court of Appeals and both were consolidated. In *Wicomico Nursing Home v. Padilla, 910 F. 3d. 739, Court of Appeals, Fourth Circuit, 2018* the Plaintiff, *Wicomico Nursing Home*, "timely appealed the court's order" dismissing their case.

*Wicomico Nursing Home* also then filed a Rule 59 motion to alter or amend the order, which was also denied. They then "timely appealed the district court's order denying their Rule59(e) motion, and *the two appeals were consolidated.*" (emphasis added). The Court of Appeals determined that their court "has jurisdiction over the consolidated appeal under 28 USC §1291". Likewise, Plaintiff Scott's sequential appeals are not barred from being under the jurisdiction of the Fourth Circuit Court of Appeals simply because they were filed in a sequential order. The Fourth Circuit Court of Appeals has jurisdiction over appeals filed sequentially, as evident in *Wicomico Nursing Home v Padilla.*

*Wicomico Nursing Home v Padilla* was not the only time multiple appeals were heard together under the jurisdiction of the Fourth Circuit. In *Kumar v. Republic of Sudan*, the defendant appealed both the default judgments *and* the denial of its post-judgment motions (*Kuma v. Republic of Sudan, 880 F. 3d. 144, Court of Appeals, Fourth Circuit, 2018*). Both were accepted by the Fourth Circuit Court of Appeals and they exercised jurisdiction over the case.

**Legal standard for a "facially invalid appeal bond".** This case before the district court is not the first of its kind in which an opposing party sought to enforce an appeal bond upon an indigent opposing litigant. However, despite the opposing party's success in getting a judge to grant an Appeal Bond, The Court of Appeals found the appeal bond order in the below cited case to be "facially invalid" and therefore, unenforceable (*Schmidt v FCI ENTERPRISES LLC*). Because the appeal bond order did not comply with the rules and legal standards of the Fourth Circuit and US Supreme Court, the Court of Appeals did not enforce the appeal bond. The same result is likely in the case of Plaintiff Scott. There are too many defects in the Order of September 22, 2021 to make it legally valid. The reasons for this are stated in Plaintiff Scott's pleadings before this court and the Court of Appeals. The Order of September 22, 2021 is facially invalid because it

does not conform with legal precedents of the US Supreme Court and the Fourth Circuit, and therefore, it cannot be legally enforced by this court of the Court of Appeals.

**Defendant Moon not prejudiced by the absence of an Appeal Bond.** However, even with an appeal bond not paid, Defendant Moon is not prejudiced. The Court of Appeals ruled that the absence of an appeal bond payment doesn't prejudice the opposing party. "FCI's failure to comply with the bond did little to prejudice the plaintiffs" (*Schmidt v FCI ENTERPRISES LLC* citing *Azizian, 499 F 3d. At 962*). Here, Defendant Moon, by counsel, has failed to show any way in which he would be prejudiced by Plaintiff Scott's challenging the validity of the Appeal Bond Order of September 22, 2021. An opposing party's dismay that they may not be able to recover any of their expenses does not suffice as "prejudice". "The Plaintiff's (perhaps rightly) fear that they will be unable to recover any of the compensation they may be due if they prevail on appeal because of FCI's insolvency. But on this record, that can hardly amount to prejudice" (*Schmidt v FCI ENTERPRISES LLC, 3 F. 4th 94, Court of Appeals, Fourth Circuit, 2021*).

**Legal standard for Appellant's inability to pay appeal bonds.**

The court goes on to explain that a litigant's unwillingness to pay an appeal bond doesn't interfere with their future ability to collect. "From that perspective, the plaintiff's ability to collect what they are due should they succeed on appeal is not lessened by FCI's failure to pay the appeal bond" (*Schmidt v FCI ENTERPRISES LLC*). Defendant Moon's incessant filings squawking about the appeal bond don't have any long term affect or prejudice upon him, should he prevail on appeal

The Fourth Circuit court of Appeals does not bar the filing and review of an Appellant's meritorious appeal brief simply because of an Appellant's inability to pay. "And we are hesitant to foreclose a meritorious appeal based on the appellant's alleged inability to pay" (*Schmidt v FCI ENTERPRISES LLC* citing *Lindsey v Normet, 405 US 56, 79, 92 S. Ct. 862, 31 L. Ed. 2d. 36*

*(1972))*. Defendant Moon's counsel's attempt to halt or end the Plaintiff's appeal by imposing an appeal bond will not result in freezing or dismissing the appeal. Even if this court would assess an appeal bond, the Plaintiff's brief has already been filed with the Fourth Circuit Court of Appeals. It is now in the discretion of the Court of Appeals to decide whether or not her appeal is meritorious. In the event that they grant Plaintiff Scott a certificate of appealability, the appeal bond amount will be moot, should Plaintiff Scott object to paying it on legal grounds or demonstrate the inability to pay.

Likewise, the misuse of motions for attorney's fees has been barred by courts. In *B2Gold CORP. v. Christopher* the Eastern District court of Virginia denied a motion for attorney's fees whose motive was to act as a sanction against the opposing party. "Thus, it is unlikely that an award of costs and attorney's fees would provide an effective sanction that would compensate plaintiffs for the expenses associated with setting aside entry of default and prompt the defendant to defend this action" *(B2Gold CORP. v. Christopher, Dist. Ct. ED Virginia 2020)*. Defendant Moon's motion is futile, as it will certainly not deter the Plaintiff in asserting her legal rights.

**Defendant Moon's Motion and Attachment lack evidence.** Defendant Moon, by counsel, has failed to show any evidence that his client would actually be paying "costs on appeal". Defendant Moon fundraises his legal fees from his website users (docket #41, page 5, footnote 13). He has not submitted any evidence like bank statements, financial transaction histories or checks demonstrating that he actually pays his attorney. Defendant Moon has not included in his Affidavit (ie "Declaration of Counsel") any statement certifying that his client Defendant Moon is the one actually paying attorney fees.

**Defendant Moon's claims of trying to minimize expenses.** In his "Declaration of Counsel" Counsel for Defendant Moon claims he has done all he could do to minimize expenses.

His superfluous amount of motions demonstrate otherwise. His failure to do proper case law research replaced instead by numerous attempts to try to peddle motions under "color of law" demonstrate otherwise. He is wasting his client's money not doing proper case law research.

Further, Plaintiff Scott gave Defendant Moon a chance to settle outside of court. Defendant Moon, by counsel, asked twice in email for Plaintiff Scott to withdraw her Complaint and Appeal. These letters were written from Defendant Moon, by counsel to Plaintiff Scott in November 2020 and September 2021. Defendant Moon declined Plaintiff Scott's reasonable offer that if he wanted her to withdraw the case, he could make an offer of restitution for malicious behavior and remove content that violated Appropriation laws. Defendant Moon has willfully chosen to proceed with litigation instead of utilizing the skills of common decency and civility in rectifying his malicious conduct.

Defendant Moon has also completely ignored any consideration of the tort of Appropriation. Since April 2, 2017 Defendant Joshua Moon had the option to remove the Plaintiff's legal name, business information and photo from his website. He was warned by Plaintiff Scott that she would take legal action. He had the option of removing the content and instead he chose to assume the risk by committing the tort of Appropriation and abusing the Plaintiff through means of his website. He has no one to blame for his attorney's fees but himself.

**Unjust awards of attorney's fees barred by legal precedent**. There is no statutory law that mandates an award of attorney's fees via a "Costs on Appeal" bond for Defendant Moon. Consequently, the decision is one left to the discretion of the court. Prior legal precedents show that Defendant Moon's willful malicious conduct toward the Plaintiff bars an award of attorney's fees through a bond for "costs on appeal" (should he prevail on appeal). "...[B]ut we have held that Congress intended that the award should be made to the successful Plaintiff *absent exceptional*

*circumstances [which would render such an award unjust]*" (*Alyeska Pipeline Service Co. v. Wilderness Society, et al., 421 US 240 (1975)* citing *Newman v. Piggie Park Enterprises, Inc., 390 US 400, Supreme Court, 1968*). In *Fairfax v CBS Corp.* the Fourth Circuit Court of Appeals upheld a district court's decision to deny a prevailing defendant's request for attorney's fees because the award of an attorney's fees would be unjust. "The D.C. Court of Appeals relied on this contrast between prevailing defendants and plaintiffs in deciding that a prevailing defendant is presumptively entitled to fees *unless special circumstances render a fee award unjust*" (emphasis added) (*Fairfax v CBS Corp. 2 F. 4th 286, Court of Appeals, Fourth District 2021*). Awarding a malicious defendant with attorney's fees would "render a fee award unjust". In this case here between Plaintiff Scott and Defendant Moon setting an appeal bond for the "Costs on Appeal" that would revert to an award of attorney's fees, should Defendant Moon prevail on appeal, is an unjust award of attorney's fees.

  Defendant Moon has conducted a course of action against the Plaintiff that is malicious, sadistic, socially deviant and abusive. Nobody in their right mind would refrain from legal action against a defendant like Joshua Moon. Plaintiff Scott is not alone in her course of action in suing Joshua Moon. He has been sued in British courts (to the favor of the opposing party) and he has been sued in 2 other federal districts in the U.S.A because of his website KiwiFarms.net. He has been reported numerous times to the FBI from multiple people because of the Cyberstalking and death threats that his website has hosted. Plaintiff Scott is not alone in her *objective* observation that Defendant Moon is a malicious, sadistic, socially deviant and abusive person. His course of conduct toward the Plaintiff has not been dignified nor civilized. Multiple respected journalists have reported objectively on his character and the abusive nature of the website he owns (KiwiFarms.net). His website has been linked as part of the proximate cause of the suicide of other

KiwiFarms.net victims. He and his users victimize other members of society using KiwiFarms.net as a platform to Cyberstalk, Cyberbully, harass, abuse and scapegoat. His website was partially responsible for the suicide of a young teenage girl. All of these facts were noted in Plaintiff Scott's prior pleadings before this court (docket #43, page 9 and 10).

The root of Defendant Moon's malicious behavior is misogyny. He has repeatedly made public comments about the Plaintiff trying to "slut shame" her for expressing her sexuality outside of his Patriarchal worldview[1]. He has tried to use his socially abusive website KiwiFarms.net as the host of an attempt to socially abuse and publicly scapegoat the Plaintiff because her children have different biological fathers[2]. This behavior from Defendant Moon is a sexist, misogynistic crusade aimed at the Plaintiff in order to reinforce his and his fellow users' sexist Patriarchal worldview. This court has the opportunity to not turn back the hands of time on the struggle for women's rights and women's equality by denying an unjust appeal bond request aimed at awarding attorney's fees to a malicious, sexist defendant. This court has the opportunity to demonstrate to society that the abuse of women on the basis of their gender and misogyny is wrong, even if the sexist defendant prevails in court. A malicious defendant does not deserve to be made whole under fee shifting of attorney's fees or bonds for "costs on appeal". Unjust awards of attorney's fees to malicious defendants is unconscionable and barred by binding legal precedent.

---

[1] https://kiwifarms.net/threads/2018-12-12-melinda-leigh-scott-v-andrew-carlson-joshua-moon-sherod-degrippo.50975/ in which Joshua Moon says about the Plaintiff: "Section (e) just claims that Andrew Carlson lied about her being a SLUT WHORE even though her having like a dozen husbands by age 30 would make that statement a fact".

[2] https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page-56#post-5824616: "I think a lot of guys looks turn you on, which explains why you're a cum dumpster with 6 babby daddies".
https://kiwifarms.net/threads/2019-01-24-melinda-leigh-scott-scott-v-moon-mkv.52722/#post-4258391: "It was also funny to me that not once does she ever categorically deny having 8 husbands, 4 baby daddies, etc. It can't be libel if it's true".
https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/page -331#post-6404876: "By the way, your crotch monkeys have, uh, 7 ½ adult caretakers? Or is it 9 now?"

**Awards of attorney's fees against the poor for participation barred by legal precedent.** "But there are countervailing considerations as well. We have observed that 'one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be *unjustly* discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel" (emphasis added) (*FD Rich Co. v United States ex. Rel. Industrial Lumber Co., 417 US 116 (1974)* citing *Fleishmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718 (1967)*. The legal standard given in *FD Rich Co. v United States ex. Rel. Industrial Lumber Co.* is that a litigant cannot "be penalized for merely defending or prosecuting a lawsuit" nor can the poor "be unjustly discouraged from instituting actions to vindicate their rights". That is exactly what Counsel Hardin for Defendant Moon seeks to do: penalize an indigent litigant for asserting their rights. He has sent personal letters in November 2020 and September 2021 to the Plaintiff to try to intimidate her out of litigation by threat of attorney's fees and post-judgment collections. He has no facts to support his legal conclusions and allegations of "frivolity" and "bad faith", so it is clear his motive is to halt, freeze, stall and end the Plaintiff's right of appeal. This course of action is barred by the legal precedents of the US Supreme Court and the Fourth Circuit, as cited above.

**Defendant Moon's repeated incorrect use of the word "frivolous" and "bad faith".** Defendant Moon, by counsel, uses the word "frivolous" and "bad faith" in his Motion and accompanying "Declaration of Counsel". However, once again, as typical of his other motions, replies and pleadings, he has failed to define "frivolous" and "bad faith" in accordance with the definitions supplied by the Supreme Court of the US and the Fourth Circuit. He uses the word "frivolous" and "bad faith" in both the Motion and accompanying attachment ("Declaration of Counsel") as allegations and legal conclusions, unsupported by any case law or facts. Again, this is

another attempt by Counsel Hardin to operate under "color of law", a common pattern of behavior for him.

By the same token, his use of the word "frivolous" in ¶4b (Motion to Set the Amount of the Appeal Bond) is inappropriately used. For one, the Order of September 22, 2021 does not use the word "frivolous" with regard to Plaintiff Scott's Complaint or proposed Appeal. Secondly, the US Supreme Court has supplied the definition of "frivolous" in *Denton v Hernandez, 504 US 25 - Supreme Court 1992*. In *Denton* the Court ruled that "frivolous" means an allegation that is "fanciful", "fantastical" or "delusional". The Court in *Denton* went on to say that a Complaint is only considered frivolous where it "lacks an arguable basis in law or fact" and that "a Complaint filed *in forma pauperis* which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) may nonetheless have 'an arguable basis in law'". Under this legal standard, Plaintiff Scott's Complaint and Appeal do not qualify as "frivolous". Her Complaint was approved for filing in the district court and deemed sufficient for an entry of Default "based on the pleadings and review of the record" (docket #19). This determination in the Order that her Complaint (a "pleading") should proceed to a Default and hearing demonstrates that her Complaint has "an arguable basis in law", otherwise it would have been dismissed long before Counsel Hardin's "Notice of Appearance".

Likewise, "bad faith", according to the legal precedents outlined in rulings by the US Supreme Court, is a complaint or appeal that is "frivolous", which requires going back to the ruling in *Denton*. "[I]n the absence of some *evident* improper motive, the applicant's good faith is established by the presentation of *any* issue not plainly frivolous." (emphasis added) (*Farley v United States*, 354 US 521, 77 S. Ct. 1371, 1 L. Ed. 2d 1529 - Supreme Court, 1957). *Farley* again uses the word "frivolous", which again requires going back to *Denton*. Counsel Hardin's Motion fails the test of these cases.

One has to wonder also, *why*, if he sincerely believes that Plaintiff Scott's case is so "frivolous" does he respond at all. Surely, if he truly believed it was a "frivolous" case, he would just wait for it to dissipate into thin air. His incessant filings have the opposite effect of giving legitimacy to Plaintiff Scott's case in that he shows he feels that he needs to put on such a "vigorous defense" (¶5, "Declaration of Counsel") because her case has merits on many levels.

**Defendant Moon's Motion and Attachment do not comply with legal standards.** In his Motion and accompanying attachment ("Declaration of Counsel"), Defendant Moon, by counsel, tries to invoke the "American Rule". He arbitrarily selects a quote from *Blue v. United States Dep't of Army* referring to someone who has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons". Once again, this use of this quotation is inappropriately selected because he doesn't support his legal conclusion with any facts. He also fails to define these words according to the definitions given in the above cited case law. His quotation choice is just a cut and paste of a quotation with no supporting facts. Defendant Moon's counsel *cannot*, and repeatedly has *not*, cited any *findings of fact*, demonstrating that Plaintiff Scott has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons". He has *not* demonstrated any facts that demonstrate Plaintiff Scott has acted *according to the legal definitions of* "bad faith", "vexatious", "wanton" or "oppressive". He simply picked terms out of one case and slapped them on paper.

In following, he cites under ¶4a that the district court has "already determined that Ms. Scott's appeal in this matter was not taken in good faith". This point is irrelevant and moot because the Order of September 22, 2021 is both facially invalid, and is in abeyance, for the reasons stated above.

**Distinguishing factors of *Blue v United States Dep't of Army*.** Defendant Moon's Counsel's choice of *Blue v United States Dep't of Army* is inappropriately chosen for the case here.

"This case is not one of a district court sanctioning attorneys and their clients for forwarding novel legal claims. Rather, it is a case in which a district court imposed sanctions because the parties and counsel *pressed on a massive scale insubstantial claims unsupported by any credible evidence*" (emphasis added). Here in this case, Plaintiff Scott has not "pressed on a massive scale insubstantial claims unsupported by any credible evidence". The Plaintiff's in *Blue* received sanctions after the district court laid out a series of findings of facts "over a substantial period of time" which "mandated a finding of bad faith". "In March and April 1985, the court conducted extensive sanctions hearings to determine the reasons why plaintiffs had abandoned their claims and whether the claims were frivolous. It heard several weeks of testimony and argument by the parties" (*Blue v US Dept. of Army*). That is the legal threshold: an actual inquiry from a district court to collect findings of facts. "In an opinion dated December 28, 1987, the district court rejected as frivolous Blue's tried claims…." (*Blue v US Dept. of Army*). The findings of frivolity, required by the legal standards of the US Supreme Court, were laid out in an Opinion by the district court in *Blue*. Here, the district court in this case did not do any investigation into facts nor did it set forth any findings of facts pointing to anything that Plaintiff Scott has filed which demonstrates "frivolity" or "bad faith". This is why Defendant Moon's motion and accompanying attachment are completely void of any findings of fact. His sloppy use of *Blue v US Dept of Army*, which is completely different in the distinguishing factors than this case, does not avail as an argument.

**WHEREFORE**, in consideration of (a) the Plaintiff's statements of fact above, (b) the binding legal precedents of the US Supreme Court cited above (c) the binding case law of the Fourth Circuit and because (d) Counsel Hardin's Motion to Set the Amount of the Appeal Bond is

not legally valid, as it contradicts binding case law upon this court and is instead another attempt by Counsel Hardin to peddle a course of action under "color of law", his Motion should be DENIED.

Alternatively, the Plaintiff motions this court for a hearing on the merits of both the Motion to Set the Amount of the Appeal Bond and the accompanying Declaration of Counsel in which Defendant Moon should be required to present evidence that he in fact paying anything out of his own pocket to Counsel Hardin. Counsel Hardin and has a propensity to violate Rule 11(b) and make false statements before this court, as noted in the Plaintiff's prior pleadings before this court (docket #75) and noted in Plaintiff's filings before the Court of Appeals. Defendant Moon's public displays of possessing a malicious character also necessitate that his claims should be put under the scrutiny of discovery.

SIGNED,

*[signature]*

Melinda Scott, *pro-se*
PO BOX 1133-2014PMB87
(VA ACP address (Va Code 2.2-515.2))
Richmond, VA 23218
540-692-2342
mscottw@gmu.edu

CERTIFICATE OF SERVICE

I certify that I have mailed a copy of this REPLY and MOTION to Counsel for the Defendant, Matthew D. Hardin, VSB #87482, 1725 I Street NW, Suite 300, Washington, D.C., 20006, and at matthewdhardin@gmail.com on this ___7th___ day of OCT., 2021.

SIGNED,

Melinda Scott, *pro-se*
PO BOX 1133-2014PMB87 (VA ACP address)
Richmond, VA 23218
540-692-2342
mscottw@gmu.edu