IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

NOV 05 2021

JULIA C. DUPLEY, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| MELINDA SCOTT, ) | |
| ) | |
| PLAINTIFF. ) | |
| ) | |
| V. ) | CL NO. 2:20cv14 |
| ) | |
| WISE CO. DSS, ) | |
| ET AL., ) | |
| ) | |
| DEFENDANTS. ) | |

## RESPONSE IN SUPPORT OF MOTION TO SEAL

COMES NOW, the Plaintiff, Melinda Scott, and responds to Defendant's objection to her Motion to Seal (docket #104, #105).

Plaintiff states:

### I. STATEMENTS OF FACT

1. The Plaintiff's Motion to Seal was brought under Rule 5.2(e) and Rule 5.2(f).

2. The Plaintiff's Motion to Seal needs no specific reference to Rule 5.2(e) and Rule5.2(f) because the word "Seal" and "Protective Order" in the title and "seal" within the motion's descriptions invoke reference to Rule 5.2. Upon seeing the words "Seal", "Protective Order" and "seal", it becomes a matter of "common

sense" that identifies and correlates that what the Plaintiff is asking is a matter of "just cause" under Rule 5.2.

3. The Plaintiff was *not* incorrect to say that the Exhibits Defendant Moon by counsel submitted to this court are *not* normally available to the public. There is no online database which allows public access to General District filings. A person has to request them from the clerk's office and *show good cause* for needing them, along with paying fees. The Plaintiff would have no reason to believe she needed to ask for the documents in the GDC to be sealed because not anyone can just walk off the street and ask for the documents. They have to show a proper motive and good cause for needing them before the Clerk would release them.

4. Further, in having been involved in court cases for the last decade, in both in civil court and in courts not of record, the Plaintiff has never in her life seen anyone ask for her court records. The malicious, abusive, sadistic and relentless pursuit of court records with improper motives by users and stalkers on KiwiFarms.net is out of the ordinary norm of societal behavior of others. Ordinary members of society do not go out of their way to use public court records to "doxx", harass, and stalk other people. They generally exist for the purpose of journalists doing factual reporting, civic organizations reporting on relevant legal cases, finding an absentee parent for child support orders, investigating potential criminal and sexual offenders in one's neighborhood, etc. Public court records were not created to be abused and misused for Cyberstalking. The Plaintiff has a reason to now be more persistent and proactive in requesting sealing by courts.

5. The Plaintiff's petition to file *in forma pauperis* (in the Buchanan County General District Court ) which included identifying details about her whereabouts, identifying information about her vehicles, and identifying information about her children's whereabouts was not relevant in any way to Defendant's claims about the Plaintiff. The Defendant's counsel could have simply submitted records from the Circuit Court which showed that her *IFP* status was transferred upwards without disclosing documents that have identifying information about the Plaintiff.

6. Defendant's counsel went purposely out of his way - with an improper motive - to submit *unnecessary* exhibits that have identifying information about her and her minor children because he is upset that the Plaintiff stood up for herself and didn't allow him to make false statements (ie lie) in pleadings without a Motion of Sanctions being filed. Like his client, he believes he should be able to act however he wants without being accountable, lest ye be subject to their impropriety and unjustified malice.

7. The Defendant's counsel put the unnecessary exhibit into the court system because he is fully aware that court documents are mis-used by users of KiwiFarms.net to abuse and stalk their victims. Defendant's counsel fawning act in trying to play innocent and dumbfounded is not unlike his client's position of trying to cover his malice. This court should not be naive to believe that an attorney with years of practice in *criminal* law would somehow *not* be aware that submitting exhibits with identifying information is inappropriate.

8. Like his exhibit which included identifying information about the Plaintiff, the Defendant's objection to her Motion to Seal was filed with an improper motive.

9. Defendant's counsel bringing up *Scott v Carlson* and *Scott v WCRHA* and *Scott v WCRHA* is unavailing and largely irrelevant. He also has his details mixed up and is victim blaming, as typical of Defendant's counsel.

   a. For one, <u>due to the actions of Joshua Moon and other Stalkers on KiwiFarms.net</u>, *prior to the filing of those lawsuits*, Joshua Moon already (a) allowed Andrew Carlson (of Schenectady, NY) to publicly post her address online. Andrew Carlson obtained her address from a government database that negligently failed to seal the Plaintiff's address. Andrew Carlson made a video showing the front door of the Plaintiff's home from photos he obtained online through Google GPS map systems. He was permitted by Joshua Moon to put it online on KiwiFarms.net and Joshua Moon did not remove it; (b) Joshua Moon allowed the posting of information about her minor children from courts not of record on KiwiFarms.net. The information was obtained from a protective order issued to Andrew Carlson. He obtained her children's name from a court document he received <u>from courts not of record.</u> The Protective Order listed the names of her minor children. Andrew Carlson obtained the information from a protective order that was issued in February 2017. The cases that Defendant counsel cites (*Scott v Carlson, et al* (2:18cv47) and *Scott v Carlson* (2:17cv100) and *Scott v WCRHA* (2:18cv45) were filed in August 2017 and 2018, long after Andrew Carlson had already posted information about the Plaintiff and her minor children on KiwiFarms.net. Information that Defendant Joshua Moon refused to remove.

    b. The posting of the Plaintiff's address and information about her minor children happened on KiwiFarms.net **before** the Plaintiff filed those cases (*Scott v Carlson, Scott v Carlson, et al* and *Scott v WCRHA*). The Plaintiff filing those cases did not enable their stalking behaviors. There was nothing contained that they didn't already find themselves from the misuse and abuse of public online records <u>and</u> the misuse and abuse of records from <u>courts not of record</u>.

    c. At the time of the filing of those cases the Plaintiff didn't know she was required to redact the names of her children through initials. The filings resulted in the court acting *sua sponte* to redact the pleadings in accordance with Rule 5.2. After that point, the Plaintiff was careful to put only initials in her *IFP* petitions and also, redacted her child's birthdate in the Complaint in the case here before the court (docket #2).

    d. It's a brand new year! Technical pleading errors in years past are now irrelevant. The Plaintiff is now asserting her right to ask for a specific type of sealing for just cause reasons.

10. The Plaintiff never once allowed identifying information that she names in her Motion to Seal[1] to be known in any court pleading. She has consistently asked for the sealing of information that could be used to violate the law and enable Cyberstalking. For example, the Plaintiff previously asked this court to seal her address and was granted this request (*Scott v Carlson* 1:16-cv-00027). Particularly,

---

[1] Identifying information including: her residential address, whereabouts of her children, whereabouts of her place of employment or school attendance, SSN numbers, county of residence, identifying information about vehicles.

see docket #3: "GRANTING plaintiff's request to use an address assigned to her by the Virginia Address Confidentiality Program; directing the clerk to place under seal the documents provided by the plaintiff with her residential address")

11. This court should take notice that the users and Stalkers on KiwiFarms.net have also attempted to usurp her vehicle information for improper purposes[2].

12. Defendant claims by counsel that only *actual* damages to one's finances is relevant in a court of law. This is erroneous, as *non-pecuniary* damages and *loss of earning potential* are relevant as well, both of which were asserted in Plaintiff's Complaint (docket #2).

13. Defendant has made the following false statements in this most recent pleading:

    a. "The Plaintiff has made statements online which indicate she believes it is lawful to transfer assets to trusts or other individuals to avoid paying a judgment" (¶5). Plaintiff denies ever saying this. What the Plaintiff said was that someone *could* do that. *Should* and *could* and *would* are all different. The Plaintiff did not say she intended to do that *nor* did she condone the behavior *nor* did she state that it was legal to conduct that course of action.

14. "There is reason to doubt the accuracy of statements made to this court and others in support of requests for *in forma pauperis* claims" (¶5). The Plaintiff denies this. Defendant's counsel is projecting his own propensity to make false statements (lies) to the court, is upset about the Plaintiff's Motion for Sanctions, and is trying to strike back by pointing the finger and falsely accusing the Plaintiff in return. He

---

[2] https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-6013831;
https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-6014204;
https://kiwifarms.net/threads/melinda-leigh-scott-marshall-castersen.32118/post-6025539

wants to deflect the attention off of his own behavior. Defendant's counsel is also prejudicial to litigants who utilize the *IFP* system. He simply doesn't like poorer people exercising their right to utilize *IFP* status because of his economic and political views. It's nothing but bias against the use of *IFP* that drives his assertions. For one, Defendant's counsel is making a sweeping claim without any support facts. For two, the Plaintiff signed her petitions under oath. The Plaintiff has never once lied to a court of law.

15. The Plaintiff denies ever asking to seal the document of October 23, 2017. She did not state that in her Motion to Seal; the reason being: the residential information and vehicle information in that Exhibit - fortunately - was old information. The Plaintiff referenced the Exhibit that Defendant's counsel submitted as an example of *why* this court needed to seal future exhibits. Defendant counsel inappropriately and recklessly filed an exhibit that he knew would be misused and abused by users and Stalkers of KiwiFarms.net. *If he would do that once, he will do it again.* Likewise, if Joshua Moon would permit the posting of identifying information on his website KiwiFarms.net to be mis-used for the purposes of Cyberstalking, he will do it again.

16. Plaintiff denies that her motive is to "hide her own litigation misconduct from public view". The Plaintiff has adequately stated in her Motion to Seal the reasons for requesting the Motion to Seal. She has repeatedly informed this court throughout this case - with evidentiary exhibits and hyperlinks - the Cyberstalking nature of KiwiFarms.net, including, but not limited to death threats and threats to do bodily injury to her and her minor children from users of KiwiFarms.net. (All content

which Joshua Moon approves of on his website). Evidence of these threats were charted and documented again in her Motion to Seal.

17. Plaintiff denies that she seeks to hide her "employment information". What the Plaintiff said in her Motion to Seal was to seal her employment *whereabouts*.

18. Defendant's counsel is *not* prejudiced by any exhibit being under seal. A document under seal is still visible to any judge ruling on the case and can still be submitted on behalf of his client.

## II. LEGAL STANDARDS OF INTERNET USE FOR CRIME

The Supreme Court has acknowledged the dangers of the misuse and abuse of the internet to harm people. In *Packingham v. North Carolina*, the Court considered the use of social media by a registered sex offender. While holding that sex offenders could not be barred from social media, it still acknowledged the misuse and abuse of the internet by devious minds. "For centuries now, inventions heralded as advances in human progress have been exploited by the criminal mind. New technologies, all too soon, can become instruments used to commit serious crimes" (*Packingham v. North Carolina*, 137 S. Ct. 1730 - Supreme Court 2017). In *Marachich v. Spears*, the Court again acknowledged that valid public concern about the misuse of public information should prompt the legislative and judicial branches of government to act: "Public concern regarding the ability of criminals and stalkers to obtain information about potential victims prompted Congress, in 1994, to enact the DPPA. A particular spur to action was the 1989 murder of the television actress Rebecca Schaeffer by a fan who had obtained her address from the California DMV. Taylor v. Acxiom Corp., 612 F.3d 325, 336 (C.A.5 2010)" (*Maracich v. Spears*,

*133 S. Ct. 2191 - Supreme Court 2013*). The Plaintiff is not alone in her concern regarding the misuse of identifying information by random people. It is a common societal concern expressed by many reasonable people because the potential for the misuse of public information is real.

Further, the Court went on to address the specific harm to children of anonymous users on the internet which gives guidance to lower courts in making decisions: "an abuser can use a child's location posts on the Internet to determine the pattern of the child's day-to-day activities — and even the child's location at a given moment. Such uses of the internet are already well documented, both in research and in reported decisions. Because protecting children from abuse is a compelling state interest and sex offenders can (and do) use the internet to engage in such abuse, it is *legitimate* and entirely *reasonable* for States to try to stop abuse from occurring before it happens (emphasis added) (*Packingham v. North Carolina, 137 S. Ct. 1730 - Supreme Court 2017*).

Kiwi Farms users and Stalkers, as well as Kiwi Farms owners have continuously tried to imply that their activities - like reposting identifying information of their victims by "doxxing" - are simply "free speech" protected under the First Amendment. The Court has stated otherwise. Cyberstalking - even in disguised forms - is not permitted under law. "Specific criminal acts are not protected speech even if speech is the means for their commission." (*See Brandenburg v. Ohio, 395 U.S. 444, 447-449, 89 S.Ct. 1827, 23 L.Ed.2d 430* (1969) (per curiam)). The re-posting of the Plaintiff's identifying information, and information that can be used to stalk the Plaintiff and her minor children are not protected "Free Speech". Sealing for valid reasons does not violate First Amendment rights either. "A sealing involving "judicial records and documents" *can be accomplished "without violating First Amendment rights* only if (1) closure serves a compelling interest; (2) *there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed*; and (3) there are no alternatives to closure that would adequately protect

that compelling interest." (emphasis added) (*Gonzalez v. Cuccinelli, 985 F. 3d 357 - Court of Appeals, 4th Circuit 2021 citing* In re Washington Post Co., 807 F.2d 383, 390, 392 (4th Cir. 1986). There is no alternative here in this case to protect the Plaintiff and her minor children from stalkers and criminals[3] on KiwiFarms.net other than sealing exhibits which have identifying information about the Plaintiff and her minor children.

The Fourth Circuit Court of Appeals has given guidance to lower courts about sealing of court documents. "In making this sealing determination, we have suggested that the factors to be considered "include *whether the records are sought for improper purposes,* such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight Pub. Co., 743 F.2d 231, 235 (4th Cir. 1984); Nixon, 435 U.S. at 597-608, 98 S.Ct. 1306." (emphasis added) (Gonzalez v. Cuccinelli, 985 F. 3d 357 - Court of Appeals, 4th Circuit 2021). KiwiFarms.net users, including Joshua Moon, seek the Plaintiff's court records for *improper purposes*: social abuse, sadism, internet harassment and Cyberstalking. No unfair business advantage would be promoted by sealing of the Plaintiff's records. The case here regarding the Plaintiff is not a matter of historical importance. The public does not already have access to the Plaintiff's residential information, the makes and models of her vehicles, information about her whereabouts or the whereabouts of her children, nor the Plaintiff's county of residence, SSN, or location of her place of employment. The Plaintiff is not a public official. There is no reason for the public to have identifying information about the Plaintiff.

---

[3] The identities of KiwiFarms.net users are anonymous and can be any criminal or sexual offender able to use the internet. The users of KiwiFarms.net span across all countries.

**WHEREFORE**, in consideration of the facts, statements, rules and case law within the Plaintiff's Motion to Seal and Response to Defendant's objections, this court should GRANT her Motion to Seal.

SIGNED RESPECTFULLY,

Melinda Scott, *pro-se*
PO BOX 1133-2014PMB87 (VA ACP address)
Richmond, VA 23218
540-692-2342
mscottw@gmu.edu

## CERTIFICATE OF SERVICE

I certify that I have mailed a copy of this RESPONSE IN SUPPORT OF MOTION TO SEAL to Counsel for the Defendant, Matthew D. Hardin, VSB #87482, 1725 I Street NW, Suite 300, Washington, D.C., 20006, and at matthewdhardin@gmail.com on this ___3rd___ day of NOV., 2021.

SIGNED,

Melinda Scott, *pro-se*
PO BOX 1133-2014PMB87 (VA ACP address)
Richmond, VA 23218
540-692-2342

mscottw@gmu.edu